[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 23 2001
THOMAS K. KAHN
CLERK

_____

No. 99-4230
_____

D. C. Docket No. 98-00540-CIV-ASG

IN RE: PIPER AIRCRAFT CORPORATION,

> Debtor.

KAISER AEROSPACE AND ELECTRONICS CORP.
and PAQ, INC., f.k.a. PIC, INC.,

> Plaintiffs-Appellees,
> Cross-Appellants,

versus

TELEDYNE INDUSTRIES, INC.,

> Defendant-Appellant,
> Cross-Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

**(March 23, 2001)**

Before EDMONDSON and MARCUS, Circuit Judges, and RESTANI[*], Judge.

_____

[*]Honorable Jane A. Restani, Judge, U.S. Court of International Trade, sitting by designation.

MARCUS, Circuit Judge:

This appeal raises complicated questions regarding the application of res judicata to bankruptcy proceedings. Appellant/Cross-Appellee Teledyne Industries, Inc. owns shares in a new corporate entity formed to receive the assets of a Chapter 11 debtor, Piper Aircraft Corp. Appellee/Cross-Appellant Kaiser Aerospace and Electronics Corp. is currently suing Teledyne in Florida state court because Teledyne allegedly violated an agreement between the parties that, Kaiser says, would have given it certain shares in the new entity. In the state court action, Kaiser seeks damages as well as a constructive trust over the shares that it contends belong to it. Teledyne brought this case as an adversary proceeding in the bankruptcy court to enjoin Kaiser's state court action on the ground that it was barred by res judicata. Teledyne asserts that Kaiser should have, but did not, pursue its allegations during the Chapter 11 case. The bankruptcy court and subsequently the district court found that Kaiser's damages claim was barred by res judicata, but that Kaiser's constructive trust claim was not barred.

Because we conclude that Kaiser's state court claims do not arise out of the same nucleus of operative fact as the Chapter 11 case, and Kaiser lacked an adequate procedural vehicle to bring its state court claims, or their equivalent, in the Chapter 11 case, res judicata is not applicable to any of Kaiser's claims.

2

Accordingly, we affirm the district court insofar as it permitted Kaiser's damages claim to proceed in state court, but reverse the district court insofar as it enjoined Kaiser's constructive trust claim from going forward.

I.

These cross-appeals arise out of a Chapter 11 reorganization proceeding filed by Piper Aircraft Corporation ("Piper") on July 1, 1991. Teledyne was one of Piper's largest creditors, holding a judgment of approximately $5,875,000 at the time of the Chapter 11 filing. Teledyne was the only unsecured creditor granted exclusive rights to participate in the preparation and submission of reorganization plans for confirmation by the bankruptcy court. Only Teledyne, the Unsecured Creditors' Committee, and Piper itself were permitted to file such plans.

In November 1994, Teledyne entered into a Cooperation and Shareholders Agreement ("Cooperation Agreement") with Kaiser, which was not a creditor of Piper and had no other stake in the Chapter 11 case. The Cooperation Agreement provided that Teledyne and Kaiser would act as co-proponents of a plan for the sale of Piper's assets. Under this plan (the "Kaiser/Teledyne plan"), a newly formed entity, Piper International Corporation ("PIC", now Appellee PAQ, Inc.) would purchase substantially all of Piper's assets. Kaiser was to be the majority shareholder, holding 65% of the stock, while Teledyne was expected to hold the

remaining 35%. Pursuant to the Kaiser/Teledyne plan, PIC would purchase Piper's assets for $32 million in cash and a $20 million junior secured note, and would assume certain liabilities as well. In exchange, Teledyne would voluntarily subordinate its claims against Piper's estate.

The Kaiser/Teledyne plan was submitted to the bankruptcy court over the objections of Piper and the Creditors' Committee, which submitted an alternative plan. A hearing was held on December 15, 1994, to consider approval of the respective disclosure statements regarding these proposed plans. After the hearing, the bankruptcy court concluded that neither plan was viable.

In the wake of that hearing through March of 1995, Piper, the Creditors' Committee, Teledyne, Kaiser, and PIC actively participated in negotiations to achieve consensus on a confirmable plan. Finally, in March 1995, Teledyne and the Creditors' Committee agreed on a new plan that provided for the acquisition of Piper's assets. By this point, however, Teledyne was no longer aligned with Kaiser. Instead, Teledyne had joined forces with another partner, Dimeling, Schreiber & Park ("DS&P").

After the bankruptcy court rejected the Teledyne/Kaiser Plan, the relationship between Teledyne and Kaiser began to erode. The parties differ on the cause of the breakdown. Teledyne claims that Kaiser, in order to satisfy the

4

Creditors' Committee and Piper, and to avoid further objections from other creditors, demanded that Teledyne accept a reduced interest in the new entity. According to Teledyne, when it declined Kaiser's modifications, Kaiser refused to attend a critical meeting with Piper and the Creditors' Committee to negotiate a workable consensual plan, and virtually abandoned the deal outlined in the Cooperation Agreement. By contrast, Kaiser contends that Teledyne demanded a substantially larger share of the new entity for no additional consideration. When Kaiser insisted that Teledyne honor its obligations under the Cooperation Agreement, Teledyne unilaterally terminated the Agreement and substituted DS&P, which was willing to accept a lesser share of the new entity, as a co-proponent of what eventually resulted in the confirmed plan. These allegations are at the core of Kaiser's state court action.

On March 31, 1995, Teledyne and DS&P, with the support of the Creditors' Committee and Piper, filed their agreed-upon joint plan (the "Teledyne/DS&P plan") in the bankruptcy court. The relevant portions of the Teledyne/DS&P plan provided that a different new entity called New Piper would acquire substantially all of Piper's assets. Primary ownership of New Piper would be held by Teledyne and DS&P. An irrevocable trust, set up to obtain the sale and other proceeds to be paid by New Piper, would be formed to make distributions to Piper's creditors.

Under the Teledyne/DS&P plan, DS&P would hold 48% of the shares of New Piper, while the Trust and Teledyne would each hold 24%. Kaiser would not hold any ownership interest.

In exchange for its rights under the Teledyne/DS&P plan, Teledyne waived all claims against Piper, including the $5,875,000 liquidated judgment it had acquired pre-petition. Teledyne asserts that, because of the size of this claim, its waiver materially and substantially increased the distributions available for other creditors and interest holders. Teledyne also contends that it made these concessions and acquired the New Piper stock in reliance on, and pursuant to, the provisions of the Teledyne/DS&P plan.

Following two days of confirmation hearings, the bankruptcy court on July 11, 1995, entered an order confirming the Teledyne/DS&P plan. Although Kaiser received formal notice and attended the confirmation hearing, it did not file or express any objections to the DS&P plan at the hearing or at any other time. Nor did it appeal the confirmation order.

Meanwhile, upon learning of the incipient arrangement between Teledyne and DS&P, but shortly prior to the filing of the Teledyne/DS&P plan, Kaiser commenced a lawsuit against Teledyne and others in Florida state court. In its original complaint, filed March 20, 1995, Kaiser sought damages from Teledyne

for breach of the Cooperation Agreement and for breach of fiduciary duty (the "damages claim"). Kaiser alleged that Teledyne breached its express obligations under the Cooperation Agreement by, among other things, "disclaiming and abandoning its obligation to cooperate with plaintiffs to enable PIC to acquire the assets of Piper," "withdrawing from and otherwise ceasing to act as a proponent of the [Kaiser/Teledyne plan] without the express consent of Kaiser and PIC," and "unilaterally terminating the Cooperation Agreement without the mutual consent of the Parties notwithstanding the absence of any breach [by] Kaiser or PIC of any obligations on their part." Kaiser further alleged that Teledyne "violated implied obligations arising under" the Cooperation Agreement, by "us[ing] a knowingly erroneous excuse to try to justify its abandonment of a binding contractual obligation, its leap to schedule furtive meetings with DS&P to better its own position [and] its purported continued negotiation on behalf of [Kaiser and PIC] when it had already contacted DS&P to bring them into the deal."

On December 10, 1996, one and a half years after confirmation of the DS&P plan, Kaiser amended its state court complaint to request a constructive trust over the stock in New Piper to the extent necessary for Kaiser to own the number of shares it allegedly would have received under the defunct Teledyne/Kaiser plan

7

(the "constructive trust claim").[1] Kaiser does not ask the state court to unwind the bankruptcy's court approval of the plan awarding ownership of New Piper to Teledyne and DS&P, or to alter any of the bankruptcy court's rulings. The practical effect of granting the constructive trust, however, would be to give Kaiser an ownership stake in New Piper, even though the bankruptcy court never considered that possibility one way or another.

Teledyne proceeded through the confirmation process without apparent concern over the state court suit. It did not mention Kaiser's suit to the bankruptcy court at the time of confirmation or address with that court any of the disputed facts giving rise to Kaiser's action. Not until April 1997 did Teledyne finally challenge before the bankruptcy court the viability of Kaiser's state court action, moving before the same bankruptcy judge who had confirmed the plan to "enforce" the confirmation order.

Eventually, at the bankruptcy court's urging, Teledyne filed the instant adversary proceeding on July 8, 1997, in which it sought declaratory and injunctive relief. Specifically, Teledyne asked the bankruptcy court to delineate the rights of

---

[1]The amended complaint sought additional relief against DS&P for its alleged participation in Teledyne's fiduciary breach and for tortious interference with an advantageous business arrangement. DS&P and PIC were also named as defendants on the constructive trust claim.

the parties and to enjoin Kaiser from interfering with the distributions and interests provided by the confirmed Teledyne/DS&P plan. The basis for this relief was res judicata. Around that time Teledyne also interposed a res judicata defense in the state court action, but did not pursue it, opting instead to seek injunctive relief from the bankruptcy court.

Teledyne moved for summary judgment in the adversary proceeding. Kaiser opposed the motion and filed a cross-motion for summary judgment. On January 14, 1998, the bankruptcy court ruled from the bench. This oral ruling, which contained an extensive recitation of the facts and circumstances that led to the dispute, was ultimately incorporated into an Order Granting in Part and Denying in Part Motions for Summary Judgment on which these appeals are predicated.

The bankruptcy court concluded that Kaiser's constructive trust claim was barred by the doctrine of res judicata, because it "attacks a material provision in the [confirmed] plan, namely, ownership and control of New Piper," and thus, was an impermissible collateral attack on the confirmed plan which should have been raised as an objection during the confirmation process. The court therefore enjoined Kaiser's prosecution of the constructive trust claim in the state court. The bankruptcy court found, however, that because no plan was pending at the time Kaiser filed its damages claim (i.e., the date the original, unamended complaint

9

was filed in state court), the damages claim was not barred by the confirmation order and could proceed in state court.

Both parties appealed portions of the bankruptcy court's order to the district court. In a lengthy order dated January 12, 1999, the district court affirmed the bankruptcy court, although on somewhat different grounds. Kaiser Aerospace & Elec. Corp. v. Teledyne Indus., Inc., 229 B.R. 860 (S.D. Fla. 1999). Like the bankruptcy court, the district court focused heavily on the different nature of the remedies sought by Kaiser. The major distinction between the district court's analysis and that of the bankruptcy court related to why Kaiser's damages claim was not barred by res judicata. The district court based its conclusion on a determination that the damages claim was not a "core proceeding" within the meaning of the Bankruptcy Code and hence could not have been brought in the bankruptcy case due to lack of subject matter jurisdiction. Notably, in reaching this conclusion, the court emphasized that "Kaiser's state court damages claims do not arise out of the same nucleus of operative fact as the bankruptcy proceeding" and that "the outcome of Kaiser's damages claims would have no 'conceivable effect' on the administration of the estate as reorganized under the Confirmed Plan."

10

On the other hand, the district court also ruled that Kaiser's constructive trust claim was a "core proceeding" that arose out of a common nucleus of operative fact with the Chapter 11 case and thus should have been pursued in that case. Accordingly, the district court, like the bankruptcy court, enjoined Kaiser from pursuing its constructive trust claim while allowing the damages claim to go forward in state court. These cross-appeals followed.

II.

The standard of review is clear. A court's application of res judicata presents questions of law reviewed de novo. See Richardson v. Miller, 101 F.3d 665, 667-68 (11th Cir. 1996). This standard applies to res judicata determinations made originally by bankruptcy courts. See, e.g., In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 (11th Cir. 1990). De novo review requires the court to make a judgment independent of the bankruptcy court's, without deference to that court's analysis and conclusions. See Moody v. Amoco Oil Co., 734 F.2d 1200, 1210 (7th Cir. 1984).[2]

---

[2]The bankruptcy court in its summary judgment decision made numerous statements about how Kaiser's lawsuit might have affected its handling of the Teledyne/DS&P plan. Teledyne insists that we must defer to those "findings." Few if any of those "findings" warrant deference, however. Many do not resolve purely factual issues, but rather go to mixed questions of law and fact that we review de novo. See In re Marks, 131 B.R. 220, 222 (S.D. Fla. 1991), aff'd, 976 F.2d 743 (11th Cir. 1992). Other "findings" are not the product of the bankruptcy court's evaluation

III.

Both parties object to portions of the district court's order affirming the bankruptcy court. As it did on appeal to the district court, Teledyne contends that the bankruptcy court erred by ruling that Kaiser's damages claim was not barred by res judicata. Kaiser, in turn, contends that the bankruptcy court erred by ruling that its constructive trust claim was barred by res judicata.

Notably, neither party suggests that the remedy-oriented res judicata analysis undertaken by the courts below is proper. Both parties view res judicata as an all-or-nothing proposition: either all of Kaiser's state court claims are barred, or none of them is barred. It is well settled that res judicata turns primarily on the commonality of the facts of the prior and subsequent actions, not on the nature of the remedies sought. See, e.g., Olmstead v. Amoco Oil Co., 725 F.2d 627, 632 (11th Cir. 1984) (res judicata "extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same 'operative nucleus of fact'"). We agree, both generally and in the

---

of conflicting live testimony or even conflicting documents, but rather the judge's own subjective reflections about information that he felt he would have deemed material to the confirmation process several years earlier -- reflections that in critical instances contradict the historical record. For these reasons, the key issues in this appeal cannot be resolved merely by deferring to the bankruptcy court's post hoc "findings." In any event, even if some deference were required, that would not alter our conclusion that res judicata is inapplicable here.

particular circumstances of this case, that the applicability of res judicata does not turn on the nature of a party's alternative legal theories. It is undisputed by Teledyne that if Kaiser is entitled to pursue its damages claim (as the courts below found), then Kaiser also is entitled to pursue its constructive trust claim.

## A.

There is no dispute about the general principles of res judicata to be applied here. Under res judicata, also known as claim preclusion, a final judgment on the merits bars the parties to a prior action from re-litigating a cause of action that was or could have been raised in that action. See, e.g., Allen v. McCurry, 449 U.S. 90, 94, 101 S. Ct. 411, 414 (1980). Res judicata may be properly applied only if certain prerequisites are met. In the Eleventh Circuit, a party seeking to invoke the doctrine must establish its propriety by satisfying four initial elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action. See Israel Discount Bank Ltd. v. Entin, 951 F.2d 311, 314 (11th Cir. 1992); In re Justice Oaks II, Ltd., 898 F.2d 1544, 1550 (11th Cir. 1990). The court next determines whether the claim in the new suit was or could have been raised in the prior action; if the answer is yes, res judicata applies. See Justice Oaks, 898

13

F.2d at 1552 (bankruptcy court's order of confirmation "'is an absolute bar to the subsequent action or suit between the same parties . . . in respect of every matter which was actually offered and received to sustain the demand, but also as to every [claim] which might have been presented'") (citation omitted).[3]  If even one of these elements is missing, res judicata is inapplicable.  See Hart v. Yamaha-Parts Distrib., Inc., 787 F.2d 1468, 1473 (11th Cir. 1986).  At all times the burden is on the party asserting res judicata (here, Teledyne) to show that the later-filed suit is

---

[3]Kaiser asserts that, even assuming the elements of res judicata exist here, the doctrine is inapplicable to its state court action because that action was filed prior to the bankruptcy court entering its confirmation order.  Thus, says Kaiser, the final judgment in the Chapter 11 case cannot serve as res judicata with regard to its suit against Teledyne.  In support of this argument, Kaiser relies on the prior pending proceeding exception to the compulsory counterclaim rule, codified in Fed. R. Civ. P. 13(a) and its Bankruptcy Rules equivalent (Fed. R. Bankr. P. 7013(a)).  But Kaiser cites no case law applying a pending proceeding exception to res judicata doctrine, and we are not persuaded that we should recognize such an exception here.  Indeed, even looking solely at the language of Rule 13(a), Kaiser's argument fails.  The rule provides that "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . . .  But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, . . . ."  Fed. R. Civ. P. 13(a).  Rule 13(a) literally requires that the otherwise precluded claim be pending before the other action was commenced, not merely before the judgment in that action was rendered.  Piper's Chapter 11 case began in 1991, four years before Kaiser filed suit.  Moreover, recognizing a prior pending proceeding exception in this case would not advance the limited policy purpose of that exception as it is applied to compulsory counterclaims.

14

barred.  See, e.g., <u>Thorsteinsson v. M/V Drangur</u>, 891 F.2d 1547, 1551 (11th Cir. 1990).

B.

We initially address the four prerequisites to res judicata.  There is no dispute that two of the requirements are met.  The parties agree that the confirmation order was issued by a court of competent jurisdiction and constitutes a final judgment on the merits.  The parties disagree about the other two requirements:  whether Kaiser was a "party" to the Chapter 11 proceeding, and whether the Chapter 11 proceeding involved the same cause of action that Kaiser has attempted to assert in the state court action.  Because we conclude that the Chapter 11 proceeding did not involve the same cause of action, we do not separately decide whether Kaiser was a party to that proceeding.

The parties agree that claims are part of the same cause of action for res judicata purposes when they arise out of the same transaction or series of transactions.  See <u>Justice Oaks</u>, 898 F.2d at 1551 (citing Restatement (Second) Judgments § 24 (1982)).  "In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form.  It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are

15

really the same 'claim' or 'cause of action' for purposes of res judicata." Ragsdale v. Rubbermaid, Inc., 193 F.3d 1235, 1239 (11th Cir. 1999) (internal citation and quotation marks omitted).

Kaiser contends that its state court action and the bankruptcy proceeding (or, more specifically, the Teledyne/DS&P plan confirmation process) do not arise out of a common nucleus of operative fact. It asserts that merely because the bankruptcy proceeding gave rise to the events for which it seeks relief in the state court action does not establish that the cases share the same factual predicate; in other words, it is not enough simply to show that "but for" the Chapter 11 proceeding there would be no state court action. The analysis, Kaiser contends, must be more precise than that. Moreover, says Kaiser, the facts underpinning the state court action (i.e., Teledyne's alleged breach of the Cooperation Agreement and its fiduciary duties to Kaiser) were not at issue in the confirmation proceeding; the bankruptcy court did not consider, and was not required to consider, any factual dispute relating to its stake in the ownership or capital structure of New Piper when confirming the Teledyne/DS&P plan. We agree with these contentions.

It is essentially undisputed that the facts at the core of Kaiser's state court suit were neither raised nor litigated in the Chapter 11 proceeding. The bankruptcy court did not purport to rule on whether Teledyne breached any contractual or

16

fiduciary duty to Kaiser, and neither party introduced any evidence regarding those alleged breaches, or the facts relating to the breakdown of the Kaiser-Teledyne relationship. The bankruptcy court made no finding or engaged in any express inquiry at the time of confirmation as to facts regarding the relative ownership interests or capital structure of New Piper. No evidence was proffered or admitted regarding the creditworthiness or business acumen of New Piper's shareholders, and no one proposed or considered any limitation that would have prevented others from obtaining some or all of their shares. It is uncontested that the plan, disclosure statements, confirmation hearing transcript, and the confirmation order are completely devoid of any reference to the percentage ownership of stock to be owned by Teledyne as opposed to Kaiser, and the import, if any, of Teledyne's role as owner of New Piper or the absence of Kaiser as an owner. There is simply no indication in the record that the facts put at issue by Kaiser's state court suit were raised or litigated before the bankruptcy court; indeed, both parties for their own strategic reasons purposefully avoided raising those facts during the Chapter 11 case.

That the critical facts underlying Kaiser's suit were never discussed by the bankruptcy court or litigated by the parties is powerful evidence that the Chapter 11 case did not involve the "same cause of action" as the state court suit. Teledyne

17

maintains, however, that the facts underlying Kaiser's state court suit were so implicated by the Chapter 11 proceeding that we should consider the two actions as arising out of a common nucleus of fact even though the relevant facts were never actually raised. Teledyne's position, as we see it, has two dimensions. It contends that "but for" the filing of the Chapter 11 case the facts underlying Kaiser's claims would never have emerged. It also contends that the ownership and capital structure of New Piper was necessarily a subject considered by the bankruptcy court in the process of confirming the Teledyne/DS&P plan. Neither of these arguments is persuasive.

To begin with, the "but for" analysis proposed by Teledyne represents too sweeping a standard for res judicata purposes. Our case law requires us to compare with much greater precision the specific facts of the two claims being examined. See, e.g., Ragsdale, 193 F.3d at 1239. Here, the facts underlying Kaiser's state court action concern the efforts of Teledyne and Kaiser to submit a joint plan of reorganization on behalf of Piper (epitomized by the Cooperation Agreement) and Teledyne's alleged breach of that relationship by forging a new proposal with DS&P. By contrast, the facts initially giving rise to the bankruptcy proceeding relate primarily to the financial collapse of Piper and do not involve Kaiser at all. We cannot say that, simply because the commencement of the

18

Chapter 11 proceeding ultimately spawned Kaiser's suit against Teledyne, that suit arises out of a common nucleus of operative fact.

Indeed, Teledyne's "but for" argument is at odds with this Circuit's frequent pronouncement that res judicata does not apply where the facts giving rise to the second case only "arise after the original pleading is filed in the earlier litigation." Manning v. City of Auburn, 953 F.2d 1355, 1360 (11th Cir. 1992). In Manning, we considered a situation in which a plaintiff elected not to participate in an employment discrimination class action but instead brought a second suit alleging employment discrimination against the same defendant. The operative facts that gave rise to the plaintiff's claims for discrimination had not occurred when the class filed its claim but some of those facts occurred before the district court dismissed the plaintiff from the class action. The plaintiff could have presented her claims in the class action by filing a supplemental pleading or by participating in discovery in that case. We observed, however, that the doctrine of res judicata does not punish a plaintiff for exercising her option not to supplement the pleadings with an after-acquired claim. We reasoned that the parties frame the scope of litigation at the time the complaint is filed and that a judgment is only conclusive regarding the matters that the parties might have litigated at that time

19

but not regarding "new rights acquired; pending the action which might have been, but which were not, required to be litigated." Id. (internal quotations omitted).

> [W]e do not believe that the res judicata preclusion of claims that "could have been brought" in earlier litigation includes claims which arise after the original pleading is filed in the earlier litigation. Instead, we believe that, for res judicata purposes, claims that "could have been brought" are claims in existence at the time the original complaint is filed or claims actually asserted . . . in the earlier action.

Id. (emphasis added) (footnote omitted) (citing Commercial Box & Lumber Co. v. Uniroyal, Inc., 623 F.2d 371, 374 n.2 (5th Cir. 1980)).

We repeated this rule from Manning in Pleming v. Universal-Rundle Corp., 142 F.3d 1354 (11th Cir. 1998). There, the plaintiff did not receive a job for which she had applied. In 1993, she filed an employment discrimination action against her employer for race and sex discrimination. In 1994, during the course of litigation, two additional positions became available; plaintiff again was not hired. Although the plaintiff incorporated into her briefs additional allegations of discrimination arising out of these later incidents, she did not assert a claim based on them. The district court granted summary judgment for the employer, after which the plaintiff filed a second suit based on the 1994 job openings. Invoking res judicata, the district court dismissed her second complaint, but this Circuit reversed. We found that the summary judgment in the first case did not have a res judicata effect so as to bar the plaintiff's later claim based upon the 1994 hiring

20

decisions, which had not occurred when the first complaint was filed. In so ruling, we first reiterated that "[r]es judicata acts as a bar 'not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact.' A court, therefore, must examine the factual issues that must be resolved in the second suit and compare them with the issues explored in the first case." Id. at 1357-58 (citations omitted). We then emphasized that "for res judicata purposes, claims that 'could have been brought' are claims in existence at the time the original complaint is filed or claims actually asserted by supplemental pleadings or otherwise in the earlier action." Id. (emphasis added) (quoting Manning, 953 F.2d at 1360). Even more recently, in Ragsdale, we applied the principle set forth in Manning, although we ultimately found that the plaintiff's claim in the later suit was barred because the events giving rise to it occurred before the first suit was brought. See 193 F.3d at 1240 (quoting Manning, 953 F.2d at 1360).

In this Circuit, therefore, res judicata does not bar a claim that was not in existence at the time of the original action unless the facts underlying the claim were actually raised in that action. Here, the facts underlying Kaiser's claim were not in existence at the time the Chapter 11 case began, and (as noted above) were never actually raised as the case unfolded. Although our decisions state the

21

principle in unequivocal terms, we recognize that different res judicata considerations may come into play when the first case is a bankruptcy proceeding; the evolving scope of a bankruptcy proceeding means that in some limited instances the bankruptcy process itself will generate and then squarely resolve the identical facts that underlie the later-filed case. That is plainly not what we have here, however, and decisions such as Manning underscore just how difficult it is to square Teledyne's "but for" argument, and indeed its entire res judicata theory, with our precedent.

We also reject Teledyne's further argument that the facts underlying Kaiser's state court suit were sufficiently implicated by the confirmation process to declare that the two arose out of a common nucleus of operative fact. Teledyne's theory, essentially endorsed by the lower courts, is that (1) facts related to the ownership and capital structure of New Piper underlay the bankruptcy court's decision to confirm the Teledyne/DS&P plan; and (2) facts relating to the ownership and capital structure of New Piper also underlie the state court action. The second of these premises is reasonable. The facts underlying Kaiser's suit -- and specifically facts relating to the process by which Teledyne first agreed to go forward with, and then allegedly excluded, Kaiser from a proposed new entity meant to receive Piper's assets -- go directly to the proper ownership and capital

structure of New Piper.  But the first premise -- that the key facts underlying the state court action were <u>necessarily</u> put at issue by the confirmation process -- is unpersuasive.

As we have said, the res judicata effect of a confirmed plan is "premised on the notion that the bankruptcy court has addressed in the confirmed plan and order only those issues that are <u>properly</u> within the scope of the confirmation hearing." <u>In re Seidler</u>, 44 F.3d 945, 948 (11th Cir. 1995) (emphasis added).  The confirmation process in a Chapter 11 case is primarily an inquiry into the viability of the proposed plan and the disposition of the debtor's assets, not the conduct of unrelated third parties, let alone third parties such as Kaiser that are not creditors and have no prior relationship with the debtor.  The Bankruptcy Code, at 11 U.S.C. § 1129(a), sets forth the criteria that a court must consider in deciding whether to confirm a plan.  Facts relating to these criteria are the only facts that <u>necessarily</u> are put at issue by the confirmation process.[4]

---

[4]Section 1129 ("Confirmation of plan") states in pertinent part as follows:

(a) The court shall confirm a plan only if all of the following requirements are met:

(1) The plan complies with the applicable provisions of this title.

(2) The proponent of the plan complies with the applicable provisions of this title.

The facts underlying Kaiser's action against Teledyne do not squarely underlie any of these criteria (which likely explains why the bankruptcy court did not explore them).[5] The bankruptcy court, in confirming the Teledyne/DS&P plan, was not determining the proper ownership composition of New Piper either at the time of confirmation or for the future, but rather was primarily determining whether the plan, as presented, met the literal requirements and policy objectives of the Bankruptcy Code by maximizing the value of Piper's estate for the benefit of

---

(3) The plan has been proposed in good faith and not by any means forbidden by law.

. . .

(11) Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan. . . .

11 U.S.C. § 1129. A court must independently satisfy itself that these criteria are met. Thus, it must consider facts relating to these criteria even in the absence of an objection. It is for this reason that merely establishing that the bankruptcy court did not actually make any findings regarding the ownership or capital structure of New Piper does not completely end the analysis -- we look at the facts that by law were necessarily implicated by the confirmation process.

[5]Although Teledyne asserts that the ownership of the "reorganized debtor" is always an issue in a Chapter 11 confirmation proceeding, here the debtor (Piper) was not, technically speaking, reorganized; rather, its assets were sold to an entirely new entity (New Piper).

Piper's creditors. The facts put at issue by Kaiser's complaint do not involve those issues.

The only factor of § 1129 arguably implicating the same core of facts as Kaiser's state court suit is contained in § 1129(a)(3), which requires the bankruptcy court to find that "the plan has been proposed in good faith and not by any means forbidden by law." Teledyne argues that determining whether a plan has been proposed in good faith necessarily requires consideration of all facts relating to the conduct of the plan proponent. Our case law, however, does not define the inquiry quite so broadly. See McCormick v. Banc One Leasing Corp., 49 F.3d 1524, 1526 (11th Cir. 1995) ("Where the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success, the good faith requirements of section 1129(a)(3) are satisfied. The focus of the court's inquiry is the plan itself, and courts must look to the totality of the circumstances surrounding the plan." (citations omitted) (emphasis added)).[6] This inquiry by definition has little to do with a prior business dispute between two potential third-party bidders. A court certainly could have found that the Teledyne/DS&P plan

---

[6]The additional cases cited by Teledyne on this point do not establish that a court addressing § 1129(a)(3) necessarily must consider the kind of facts underpinning Kaiser's state court action. Rather, these cases -- like McCormick -- simply explain that the court must focus on the totality of the circumstances relevant to the plan proponent's good faith in submitting the plan.

was "proposed with the legitimate and honest purpose to reorganize" Piper without delving into facts surrounding Teledyne's alleged breach of the Cooperation Agreement or its fiduciary duties to Kaiser.[7]

Teledyne also insists that the facts underpinning the state court action are necessarily bound up with determining whether the plan had a reasonable hope of success. See 11 U.S.C. § 1129(a)(11). Teledyne relies heavily on the bankruptcy court's post hoc "finding" that facts underlying the state court action would have impacted its assessment of the likely success of the plan. The bankruptcy court observed that "[t]he capital structure, ownership and viability of New Piper was a material part of the plan considered by the parties and the Court," and that Teledyne's rights to and ownership percentage in New Piper "are the very matters that were determined and at stake in the confirmation hearing." The court also found that New Piper's ability to fund the trust that would be used to pay off creditors "is a function of New Piper's success and profitability and it is no great stretch to, in turn, say that a function of the skills and business acumen of

---

[7]Teledyne makes one other argument under § 1129(a)(3). It asserts, without persuasive support, that the statute's requirement that the bankruptcy court consider whether the plan was proposed "not by any means forbidden by law" necessarily made the facts underpinning Kaiser's suit part of the facts underlying the confirmation process. The statutory language refers to the manner by which the plan at issue is proposed to the court and interested parties, not the manner by which one of the plan proponents went about creating the plan.

management and owners." But there is no indication that the bankruptcy court was required to make (let alone actually made) any inquiry into the "skills and business acumen of [New Piper's] owners" such that it would necessarily have considered collateral facts relating to Teledyne's inclusion of DS&P rather than Kaiser in its plan. New Piper was to continue with existing Piper management under either the Kaiser/Teledyne plan or the Teledyne/DS&P plan.

Moreover, the bankruptcy court was not required to consider -- and, tellingly, did not consider -- any limitation on Teledyne's ability to sell some or all of its shares and thereby relinquish ownership of New Piper. Teledyne argues that we should not attach much importance to the absence of a restriction in the plan on its ability to alienate its shares. But Teledyne cannot deny that the absence of such a limitation undercuts its argument that its post-confirmation stake in New Piper was so important an issue that the facts surrounding its dispute with Kaiser would necessarily have been implicated by the confirmation process.

Ultimately the most one can say is that the Kaiser/Teledyne dispute, and the attendant possibility that Teledyne's loss of that dispute might impact New Piper (either by transferring equitable ownership of some New Piper shares to Kaiser or by forcing Teledyne to pay significant damages), could be viewed as material to confirmation of the plan. But the test for "common nucleus of operative fact" as

defined for purposes of res judicata is not simply one of whether the two claims are related to or may materially impact one another. The underlying core of facts must be the same in both proceedings. Quite simply:

> The issue is not what effect the present claim might have had on the earlier one, but whether the same facts are involved in both cases, so that the present claim could have been effectively litigated with the prior one.

In re Baudoin, 981 F.2d 736, 743 (5th Cir. 1993).

Looking at the facts that the bankruptcy court was by law required to consider, and the facts that it actually did consider, at the confirmation hearing, we simply cannot say that the facts underpinning Kaiser's dispute with Teledyne were sufficiently put at issue by the confirmation process to support res judicata. The facts raised by Kaiser's suit regarding Teledyne's private business dealings with Kaiser and their relative allocation of ownership interests in the post-reorganization entity have only an attenuated relationship to the facts necessarily considered by the bankruptcy court as part of its § 1129 analysis. We cannot infer, on this record, that the bankruptcy court considered the kinds of facts raised by Kaiser's state court suit, and therefore cannot hold that the confirmation process involved the "same cause of action."

We are bolstered in this conclusion by Teledyne's own conduct during the confirmation process. If indeed Kaiser's suit must be viewed as nothing more than

28

a collateral attack on confirmation of the Teledyne/DS&P plan, or threatens so substantially the purposes for which that plan was proposed and adopted, why did Teledyne never advise the bankruptcy court of the existence of the suit until long after the confirmation process was complete? Kaiser's suit, as noted above, was filed before the Teledyne/DS&P plan was even submitted to the bankruptcy court. Yet Teledyne chose not to inform the bankruptcy court about that suit, and chose not to delve into the facts put at issue by Kaiser's breach of contract and breach of fiduciary duty claims. Indeed, if the suit was truly meant to accomplish what Teledyne now says it was meant to accomplish (to "undo and undermine the entire Reorganization Plan"), then surely Teledyne would have been under an obligation to disclose the existence of the suit to the court and creditors prior to confirmation (either at the hearing or by amending its disclosure statement). It is not unfair to infer from Teledyne's conduct that Kaiser's suit, and the facts underlying it, were not quite so integral to the confirmation process as Teledyne now suggests.

In short, we cannot say that the state court action arises out of a common nucleus of operative fact with the Chapter 11 case. Our task is to "compare the factual issues explored in the first action with the factual issues to be resolved in the second." Entin, 951 F.2d at 315; see also Southeast Fla. Cable Inc. v. Martin County, 173 F.3d 1332, 1336 (11th Cir. 1999) (res judicata inapplicable where "the

29

factual premise of the present suit differs quite significantly from the prior one");

Manning, 953 F.2d at 1359 (res judicata inapplicable where the second suit "d[oes] not involve the same factual situation" (internal quotation marks and brackets omitted)). Here, the connection between the core facts of the state court suit -- relating to the contractual and fiduciary terms governing the Kaiser/Teledyne relationship and the breakdown of that relationship -- and the core facts of the confirmation process -- relating to the discharge of Piper's debts, the disposition of its assets, and the distribution of proceeds to its creditors -- is simply too attenuated to justify res judicata. This is especially true because the key facts underlying Kaiser's suit did not even exist at the time of the Chapter 11 filing and were never actually raised by the parties or discussed by the bankruptcy court during the Chapter 11 case. Teledyne simply cannot meet the "same cause of action" prerequisite to applying res judicata.[8]

---

[8]Teledyne's extensive reliance on the former Fifth Circuit's decision in Miller v. Meinhard-Commercial Corp., 462 F.2d 358 (5th Cir. 1972), is misplaced. In Miller, the court upheld the dismissal of a lawsuit by a creditor who alleged that the debtor fraudulently induced him to acquiesce in allowing the debtor to proceed under Chapter 11 rather than Chapter 10. The creditor asserted that his suit did not implicate the bankruptcy court's order confirming the debtor's Chapter 11 plan because the cause of action asserted, fraud, had nothing to do with the arrangement proceeding, the bankrupt, or the estate. The court disagreed, observing that "[t]he suit is no more than a collateral attack upon the referee's order confirming the plan of arrangement; the integrity of the judgment is challenged. . . . Through his fraud action, Miller is indirectly asserting that the Chapter XI proceeding should never have been approved

C.

Even if we were to decide that all of the prerequisites to res judicata were met, Teledyne still would not be entitled to relief because the claims in Kaiser's state court action were not brought, and more importantly could not have been brought, in the bankruptcy proceeding. The courts below found that Kaiser's constructive trust claim could have been litigated in the bankruptcy action, but that its damages claim could not have been litigated there due to lack of jurisdiction. Kaiser makes multiple arguments as to why neither its damages claim nor its

_____

and that a Chapter X procedure should have been decreed instead." Id. at 360 (citations omitted). There are important distinctions between this case and Miller. The facts underpinning Miller's suit were much closer to those implicated by the bankruptcy proceeding and specifically the bankruptcy court's finding that the case was properly filed under Chapter 11. Here, as noted above, the facts underpinning Kaiser's state court action are quite far removed from those necessarily implicated by the confirmation process. In addition, Kaiser's suit cannot accurately be described as a "no more than a collateral attack" upon the confirmation order, because at least the damages portion of Kaiser's suit was filed before the Teledyne/DS&P plan was even submitted to the bankruptcy court.

Teledyne also relies on the Fifth Circuit's decision in Southmark Properties v. Charles House Corp., 742 F.2d 862, 869 (5th Cir. 1984) for the proposition that res judicata can apply to damages claims which have the effect of challenging a confirmation order. In that case, a debtor brought a state court damages action against a creditor who successfully bid for and purchased the debtor's property at a bankruptcy-related sale. The debtor sought damages based on the creditor's alleged fraudulent conduct. The court found that res judicata barred the state court suit, describing it as a "not-so-thinly veiled attack[] on the prior reorganization orders." 742 F.2d at 869. But Southmark, like Miller, is inapplicable here because in that case the debtor's non-entitlement to continued ownership of its property was at the very core of the bankruptcy court's decision to approve the sale. In this case Kaiser's entitlement to shares in New Piper was not squarely at issue in the bankruptcy court's decision to approve the Teledyne/DS&P plan.

31

constructive trust claim could have been litigated in the bankruptcy case. In particular, Kaiser contends that it had no adequate procedural mechanism by which to assert its state court claims in the bankruptcy case.[9] Teledyne fails to show that such a procedural vehicle exists.

Teledyne argues that Kaiser could have brought its claims in the form of an objection to confirmation of the Teledyne/DS&P plan, or a motion to strike that plan.[10] Kaiser counters that the nature of its objections -- Teledyne's breach of its contractual and fiduciary duties to Kaiser -- could not have formed a basis for invalidating the plan under the statutory criteria of § 1129(a). We find that argument persuasive, as discussed above, but there is an even greater problem. Merely objecting to the Teledyne/DS&P plan would not have been the equivalent of pursuing the claims Kaiser asserts in state court. If Kaiser had succeeded in

_____

[9]Kaiser also asserts that the bankruptcy court would not have had jurisdiction over its claims. Teledyne disputes that argument, which we find unnecessary to address given the other grounds for rejecting res judicata here. Notably, the parties do agree that the district court's analysis of whether Kaiser's claims were within the bankruptcy court's "core" jurisdiction asked the wrong question: whether an issue is "core" relates to how jurisdiction is exercised (i.e., whether the bankruptcy court is limited to making findings and conclusions for the district court and opposed to ruling outright, see 28 U.S.C. § 157(c)(1)), rather than whether jurisdiction exists.

[10]Teledyne does not, and cannot, argue that Kaiser could have pursued its state court claims in identical form as part of the Chapter 11 case. Rather, Teledyne's point is that Kaiser could have obtained equivalent relief by channeling its claims and allegations into an attack on the Teledyne/DS&P plan.

32

objecting to the plan (even assuming that it had standing to object and could have done so merely on the strength of its breach of contract and breach of fiduciary duty allegations), it would not thereby have received any equitable ownership rights in New Piper or any money from Teledyne.[11]  Rather, the plan would have been defeated, a form of relief Kaiser does not seek in the state court suit.  While defeat of the plan might have rendered unnecessary any claim of entitlement to shares in New Piper, it would not necessarily have resolved Kaiser's claims for damages -- including potential consequential and punitive damages -- based on Teledyne's alleged breaches.  More to the point, it plainly would not have guaranteed Kaiser ownership of a piece of the reorganized entity eventually

---

[11]We think it far from clear that Kaiser constituted a party in interest with standing to object to the Teledyne/DS&P plan.  Under the Bankruptcy Code, only a "party in interest" may appear in a bankruptcy proceeding and be heard on an issue such as confirmation of a plan.  11 U.S.C. § 1109(b).  "Party in interest" is defined non-exclusively to include "the debtor, the trustee, a creditor's committee, an equity security holder's committee, a creditor, an equity security holder, or any indenture trustee."  Id.  Kaiser argues that it was not a party in interest because it was not among the groups of interested parties specifically identified in § 1109(b) and at best was akin to an unsuccessful bidder at a sale of bankruptcy estate assets.  See In re O'Brien Envtl. Energy Inc., 181 F.3d 527, 531 (3d Cir. 1999) ("disappointed prospective purchasers" of estate assets at a trustee sale lacked party-in-interest standing).  Kaiser also observes that it did not participate in the confirmation proceeding regarding the Teledyne/DS&P plan, and that it had no right to submit unilaterally an alternative plan of reorganization in opposition to the plan eventually put forward by Teledyne and DS&P.  Compare Justice Oaks, 898 F.2d at 1551 ("One who participates in a Chapter 11 plan confirmation proceeding becomes a party to that proceeding even if never formally named as such.") (emphasis added).

emerging from the bankruptcy case (something its constructive trust claim would accomplish if successful today). We are unconvinced that Kaiser's possible right to object to the plan provided an adequate vehicle to assert fully the claims it raises in the state court action.

Teledyne also suggests that Kaiser could have brought an adversary complaint in the bankruptcy court to enjoin the Teledyne/DS&P plan. For similar reasons, however, this relief would not have provided a complete substitute for the relief sought in the state court action. Cf. also Cen-Pen Corp. v. Hanson, 58 F.3d 89, 93 (4th Cir. 1995) ("confirmation of a . . . plan is res judicata only as to issues that can be raised in the less formal procedure for contested matters . . . confirmation generally cannot have [a] preclusive effect as to [matters] which must be raised in an adversary proceeding."); In re Beard, 112 B.R. 951, 956 (Bankr. N.D. Ind. 1990) ("If an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclusive effect."). Even assuming that Kaiser had standing to oppose the Teledyne/DS&P plan, challenging the plan through an adversary proceeding would not have made Kaiser whole in the way the state court lawsuit would if Kaiser eventually prevailed in that suit.

To reiterate, what Kaiser seeks in the state court suit is not the defeat of the Teledyne/DP&S plan, but rather ownership rights in the post-reorganization entity, or damages equal to the profits and benefits that it would receive if it had such ownership rights. We are unaware of any lawful basis upon which Kaiser could have brought, let alone win, an adversary proceeding before the bankruptcy court not only to block the Teledyne/DP&S plan, but also to have the court adopt an alternative plan giving it an ownership interest in a post-reorganization entity over the undoubted opposition of the debtor, Teledyne, and all other proponents of the Teledyne/DP&S plan. We cannot even see how Kaiser could have brought an adversary proceeding to force adoption of an alternative plan; among other obstacles, Kaiser did not have statutory standing to submit a reorganization plan of its own, and even if it did it could not have submitted a plan because it was not among the parties granted exclusivity.

Simply put, we are unpersuaded that Kaiser had an adequate vehicle to pursue in the Chapter 11 case the equivalent of the claims it asserts in state court.[12] None of the available bankruptcy court procedures would have assured Kaiser the

---

[12]Teledyne cites post hoc "findings" by the bankruptcy judge that he would have addressed Kaiser's concerns if they had been raised. We are unpersuaded, however, that the bankruptcy court had any proper basis for doing so. Moreover, res judicata did not require Kaiser to raise its concerns based merely on speculation that the bankruptcy court might somehow have fashioned a way to address them.

35

full relief sought in its state court suit. Teledyne's efforts to show otherwise are not only incomplete, but they also require too many highly questionable assumptions at odds with the plain language of the Code and Kaiser's third-party, non-creditor status in the Chapter 11 case.

Because Kaiser did not have an adequate procedural vehicle to bring its state court claims, or their equivalent, in the Chapter 11 case, and Kaiser's state court does not arise out of the same nucleus of operative fact as the Chapter 11 case, Teledyne cannot meet its burden of showing that the technical requirements of res judicata are met. On this record, and under our precedent, Kaiser is entitled to its day in court, and the considerations of policy argued at length by Teledyne do not permit us to relax the requirements of res judicata in these circumstances. Nor do the equities tip as powerfully in Teledyne's favor as Teledyne maintains. Even the bankruptcy court was troubled by Teledyne's two-year delay in asserting that Kaiser's damages claim was an indirect attack on the confirmed plan. That court also admonished Teledyne for not raising res judicata as a defense in the state court action promptly once the final order of confirmation was rendered. Teledyne could have brought Kaiser's suit to the attention of the bankruptcy court prior to confirmation, but chose not to do so. We note these facts not to identify wrongdoing by Teledyne, but merely to underscore why Teledyne's frequent

36

emphasis on its perceptions of fairness and equity do not alter the res judicata analysis mandated by our precedent.

Accordingly, we affirm the district court insofar as it permitted Kaiser's damages claim to proceed, but reverse that court insofar as it enjoined the constructive trust claim from going forward. Res judicata does not bar Kaiser from pursuing its state court action <u>in full</u>, and Kaiser's summary judgment motion should have been granted in its entirety.

**AFFIRMED IN PART AND REVERSED IN PART.**