[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOV 17, 2010
JOHN LEY
CLERK

No. 10-10897
Non-Argument Calendar
_____

Agency No. A090-731-011

JOSE GARCIA-PADILLA,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 17, 2010)

Before EDMONDSON, MARTIN and KRAVITCH, Circuit Judges.

PER CURIAM:

Jose Garcia-Padilla, a native and citizen of Mexico, entered the United States illegally in 1985. He was later granted temporary-resident status and became a lawful permanent resident (LPR) in 1990. In 1991, Garcia-Padilla pleaded guilty in federal court to illegally entering the United States. In exchange for his plea, the government dismissed two other charges against Garcia-Padilla: alien smuggling, and aiding and abetting aliens entering the United States. The criminal charges were based on statements Garcia-Padilla had made to immigration officials that he assisted his common-law wife, their two children, and her brother with entering the United States "illegally through a hole in the fence."

Based on his plea and this conduct, the Immigration and Naturalization Service initiated deportation proceedings and issued an Order to Show Cause (OSC) why Garcia-Padilla should not be deported for entering the United States without inspection. Garcia-Padilla failed to appear at the subsequent deportation hearing and the Immigration Judge (IJ) ordered him deportable. Instead of leaving the United States, however, Garcia-Padilla remained in the country until May 2008, when he voluntarily traveled to Mexico. A few weeks later, Garcia-Padilla was admitted into the United States as a returning LPR, but he did not possess or present any valid entry documents. As a result, in 2009 the Department of

2

Homeland Security[1] issued a notice to appear, charging Garcia-Padilla as removable under 8 U.S.C. § 1227(a)(1)(B).

Garcia-Padilla filed for permission to reapply for admission and an I-485 application to adjust his status to that of a permanent resident. The government filed a motion to pretermit the I-485 application on the grounds that Garcia-Padilla was inadmissible because he had been involved with smuggling aliens, namely, his brother-in-law. The government further argued that Garcia-Padilla was inadmissible because he had left the United States while under an outstanding order of removal and had not remained outside the country for at least ten years before seeking readmission.

Garcia-Padilla responded that he was eligible for a waiver of inadmissibility because he had married a citizen in 1998, he was never convicted of alien smuggling, and the OCS was insufficient to support his deportation. He also claimed that he was unaware of the deportation order, which had been issued in his absence.

The IJ granted the motion to pretermit, finding that Garcia-Padilla, having admitted smuggling his brother-in-law into the United States, was inadmissible.

---

[1]   The Homeland Security Act of 2002 abolished the INS and transferred its functions to the new Department of Homeland Security.

The IJ further found that Garcia-Padilla was inadmissible because he had not departed following the entry of the deportation order, had re-entered the United States without waiting the required ten years, and had not obtained a waiver before re-entry.

Garcia-Padilla asked the IJ to reconsider the decision, arguing that the dismissal of the alien-smuggling charges was entitled to *res judicata* or collateral-estoppal effect. He also argued that he was eligible for a waiver of inadmissibility because he was married to a U.S. citizen. Finally, he asserted that the OSC was improper because the government had been aware of his LPR status. Garcia-Padilla then appealed to the Board of Immigration Appeals (BIA).

The BIA affirmed. The BIA explained that Garcia-Padilla's LPR status automatically terminated when the 1991 deportation order became final; the deportation order was executed when Garcia-Padilla left in 2008; an LPR could be charged with deportability for entry without inspection; and neither *res judicata* nor collateral estoppal precluded the IJ from considering whether Garcia-Padilla had engaged in alien smuggling. The BIA further found that the IJ had properly refused to consider Garcia-Padilla's waiver because he was otherwise inadmissible and thus ineligible for adjustment of status. The BIA did not address Garcia-Padilla's challenge to the 1991 deportation order itself because he had not raised

4

the issue before the IJ.  Garcia-Padilla now petitions this court for review of the BIA's order dismissing his appeal.  He challenges (1) the BIA's conclusion that neither *res judicata* nor collateral estoppal barred the IJ from considering his alleged alien smuggling; (2) the sufficiency of the OCS; (3) the determination that he was inadmissible; and (4) the denial of his application for adjustment of status.

When considering a petition to review a BIA final order, we review legal issues *de novo*.  *Hernandez v. U.S. Att'y Gen.*, 513 F.3d 1336, 1339 (11th Cir. 2008).  The BIA's factual findings are reviewed under the substantial evidence test.  *Id.*  When the BIA issues a decision, we review only that decision, except to the extent that the BIA expressly adopts the IJ's opinion.  *Id.* at 1338-39.  Here, the BIA did not expressly adopt the IJ's order, so we review only the BIA's order.

## I.

Garcia-Padilla argues that the government is estopped from using his alien-smuggling conduct against him in deportation proceedings because those charges were dismissed under the terms of his plea agreement in his 1991 criminal case.  Garcia-Padilla  argues that considering this conduct violates double jeopardy.

We review questions of *res judicata de novo*.  *In re Piper Aircraft Corp.*, 244 F.3d. 1289, 1295 (11th Cir. 2001).  The doctrine of *res judicata* "bars the filing of claims which were raised or could have been raised in an earlier

5

proceeding." *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). *Res judicata* bars the filing of a claim when four requirements have been met: (1) there has been a final judgment on the merits, (2) rendered by a court of competent jurisdiction, (3) the parties in both suits are identical, and (4) both cases involve the same cause of action. *Singh v. U.S. Att'y Gen.,* 561 F.3d 1275, 1280 (11th Cir. 2009). We then determine whether the claim could have been raised in the prior action; if so, *res judicata* applies. *Piper Aircraft*, 244 F.3d at 1296. The party asserting *res judicata* carries the burden to show that the later-filed action is barred. *Id.*

Generally, if a case arises out of the same "nucleus of operative fact" as a former case, the two cases are the same for *res judicata* purposes. *Singh*, 561 F.3d at 1280. But "*res judicata* does not bar a claim that was not in existence at the time of the original action unless the facts underlying the claim were actually raised in that action." *Id.* (quoting *Piper Aircraft Corp.*, 244 F.3d at 1299).

Here, Garcia-Padilla's guilty plea and 1991 deportation order were the result of his illegal entry into the country. When he applied for adjustment of status during the 2009 removal proceedings, the government argued that Garcia-Padilla was inadmissible because he had smuggled his brother-in-law into the country. Although the criminal case and the 1991 deportation proceeding

6

involved some of the same facts as the 2009 removal proceeding and application for adjustment of status, the question of Garcia-Padilla's inadmissibility and eligibility for adjustment of status was not raised or even in existence in 1991. Therefore, the two cases do not involve the "same cause of action" and *res judicata* does not apply.

Collateral estoppel is a legal issue that we review *de novo*. *Dailide v. U.S. Att'y Gen.*, 387 F.3d 1335, 1341 (11th Cir. 2004). Collateral estoppel precludes a party from litigating an issue in a later action if that issue was fully litigated in a prior action. *Id.* at 1342. For the doctrine to apply (1) the issue now at stake must be identical to the one involved in the prior proceeding, (2) the resolution of the issue in the prior litigation must have been a critical and necessary part of the judgment, (3) the issue must actually have been litigated in the prior proceeding, and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding. *Id.*

Here, the alien-smuggling issue was never litigated in a prior proceeding. *See Dailide*, 387 F.3d at 1342. The alien-smuggling charges were dismissed under the terms of a plea agreement in a 1991 criminal case. A criminal charge dismissed pursuant to a plea agreement is not an indication that the accused is innocent. *See Uboh v. Reno*, 141 F.3d 1000, 1004-05 (11th Cir. 1998) (noting that

7

dismissal of criminal charges pursuant to a compromise or agreement does not constitute a favorable termination).  Moreover, immigration proceedings are civil, not criminal, proceedings, *Cadet v. Bulger*, 377 F.3d. 1173, 1196 (11th Cir. 2004), and the government may raise, in a civil proceeding, an issue on which it "lost" in a criminal case, *Tomlinson v. Lefkowitz*, 334 F.2d 262, 264 (5th Cir. 1964).[2]  Thus, collateral estoppel does not apply.

Finally, Garcia-Padilla's due process argument fails because deportation proceedings cannot form the basis of a double-jeopardy claim; double jeopardy arises in criminal proceedings, and deportation is a civil matter.  *See Cadet*, 377 F.3d at 1196.

## II.

Garcia-Padilla argues that the OCS was insufficient to support his deportation because it failed to charge a violation of immigration law and because he was an LPR.  We disagree.

"Any alien who entered the United States without inspection . . . or is in the United States in violation of this chapter or any other law of the United States is

---

[2]  In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*), this court held that all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit.

deportable."  8 U.S.C. § 1251(a)(1)(B) (1991);[3] *In re Briones*, 24 I.&N. Dec. 355, 362-63 (BIA 2007).

When the OCS was issued in 1991, Garcia-Padilla was charged with entry without inspection.  His status as an LPR did not preclude deportation on this ground.  *See Matter of Ruis*, 18 I.&N. Dec. 320,  320-22 (BIA 1982) (noting that an LPR may be charged with being deportable for entry without inspection).  Accordingly, the 1991 OSC properly charged Garcia-Padilla with a violation of the immigration laws and was sufficient to support the deportation order.[4]

### III.

Garcia-Padilla argues that his status as an LPR prevents the government from deeming him deported when he traveled to Mexico.

The LPR status of an alien who has entered the United States without inspection terminates "when the adjudication of his deportability becomes final in administrative proceedings." *Matter of Gunaydin and Kircali*, 18 I.&N. Dec. 326, 328 (BIA 1982).  Any alien who has been ordered deported and who has left the United States is considered to have been deported in accordance with the law.  8

---

[3] This statute is currently codified at 8 U.S.C. § 1227.

[4] To the extent that Garcia-Padilla challenges the 1991 deportation order as issued *in absentia*, he has not filed a motion to reopen the original deportation proceedings underlying the order.  Therefore, we lack jurisdiction to consider this argument.  *Amaya-Artunduaga v. U.S. Att'y Gen.,* 463 F.3d 1247, 1250-51 (11th Cir. 2006).

U.S.C. § 1101(g). "Deportation orders are self-executing orders, not dependent upon judicial enforcement." *Stone v. INS*, 514 U.S. 386, 398 (1995).

In this case, Garcia-Padilla's LPR status was terminated when the 1991 deportation order became final. *Gunaydin*, 18 I.&N. Dec. at 328. When Garcia-Padilla later traveled to Mexico, his 1991 deportation order self-executed, and he was considered deported pursuant to law. 8 U.S.C. § 1101(g); *Stone*, 514 U.S. at 398. Therefore, the BIA's conclusion that Garcia-Padilla removed himself is not in error.

## IV.

Finally, Garcia-Padilla argues that he was entitled to a waiver of inadmissibility and to an adjustment of status.

In a removal proceeding, the applicant bears the burden of proving that he is "clearly and beyond doubt entitled to be admitted and is not inadmissible" under 8 U.S.C. § 1182. 8 U.S.C. § 1229a(c)(2)(A). An alien is eligible for adjustment of status if, among other requirements, "the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence." 8 U.S.C. § 1255(a).

An alien who is involved in smuggling, however, is not eligible for admission. 8 U.S.C. § 1182(a)(6)(E)(i). The Attorney General may waive this

ineligibility "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest" if the alien seeking the waiver is an LPR "who temporarily proceeded abroad voluntarily and not under an order of removal, and who is otherwise admissible to the United States as a returning resident." 8 U.S.C. § 1182(d)(11). But this waiver is only available if the individual the alien has "encouraged, induced, assisted, abetted, or aided . . . was the alien's spouse, parent, son, or daughter (and no other individual)." *Id.* Furthermore, an alien who has been ordered removed and who attempts to re-enter the United States without being admitted is inadmissible. 8 U.S.C. § 1182(a)(9)(C)(i)(II). Aliens subject to 8 U.S.C. § 1182(a)(9)(C) may nevertheless seek re-admission after waiting 10 years. 8 U.S.C. § 1182(a)(9)(C)(ii).

Here, Garcia-Padilla engaged in alien smuggling, which made him inadmissible. 8 U.S.C. § 1182(a)(6)(E)(i). Moreover, because Garcia-Padilla entered the United States within 10 years of his self-executed deportation, he is inadmissible. 8 U.S.C. §§ 1182(a)(9)(C)(i)(II), 1255(a). Because Garcia-Padilla was inadmissible on these grounds, he was ineligible for a waiver of inadmissibility.

Additionally, because Garcia-Padilla was ineligible for a waiver, there was no reason for the BIA to consider Garcia-Padilla's marriage. *See I.N.S. v.*

11

*Bagamasbad*, 429 U.S. 24, 25 (1976) (holding that "courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach").

Accordingly, we conclude that the BIA's decision was supported by substantial evidence.

**PETITION DENIED.**