[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-13623
_____

D.C. Docket No. 1:08-cv-23386-ASG


INACIO LOBO,
JOHN GOMEZ,
et al., each on their own behalf and on
behalf of all other current and former
employees of Celebrity Cruises, Inc. similarly situated,

                                                            Plaintiffs,


INACIO LOBO,
JOHN GOMEZ,
JOAO RODRIGUES,
RAIMUNDO REBELLO,
ANTONIO MENEZES,
LAZARO D'COSTA,
MENINO SERRAO,
LUIS PEREIRA,
ALEXIO FERNANDES,
AGNELO FERNANDES,
MINGUEL PEREIRA,

                                                            Plaintiffs - Appellants,

                                versus

CELEBRITY CRUISES, INC.,
FEDERAZIONE ITALIANAN TRANSPORTI,

                                                     Defendants - Appellees.

————————————————

No. 10-10406

————————————————

D.C. Docket No. 1:09-cv-22991-PCH

JOHN GOMEZ,
JOAO RODRIGUES,
et al., each on their own behalf and on
behalf of all other current and former
employees of Celebrity Cruises, Inc. similarly situated,

                                                     Plaintiffs,

JOHN GOMEZ,
JOAO RODRIGUES,
RAIMUNDO REBELLO,
AGENELO ANTONIO MENEZES,
LAZARO D'COSTA,
MENINO SERRAO,
LUIS PEREIRA,
ALEXIO FERNANDES,
AGNELO FERNANDES,
MINGUEL PEREIRA,

                                                     Plaintiffs - Appellants,

versus

2

CELEBRITY CRUISES, INC.,

                                                    Defendant - Appellee.

_____

Appeals from the United States District Court
for the Southern District of Florida
_____
(January 7, 2013)

Before TJOFLAT, PRYOR and RIPPLE,[*] Circuit Judges.

TJOFLAT, Circuit Judge:

I.

A.

In Lobo v. Celebrity Cruises, Inc. ("Lobo I"), 488 F.3d 891 (11th Cir. 2007), we held that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("Convention") and its implementing legislation, 9 U.S.C. §§ 202-208, superceded the Seaman's Wage Act, 46 U.S.C. § 10313, and required the District Court to grant a motion to compel arbitration of a foreign seaman's claim for wages allegedly due under a collective bargaining agreement. We accordingly affirmed the District Court's order compelling the arbitration of a

_____

[*] Honorable Kenneth F. Ripple, United States Circuit Judge for the Seventh Circuit, sitting by designation.

cabin steward's claim for wages—in the form of tips passengers paid for his
services—that his employer, a cruise line, allegedly withheld.[1]

The cabin steward was Inacio Lobo.  After his case was submitted to
arbitration, Lobo became dissatisfied with the representation his union,
Federazione Italianan Transporti ("FIT"), was providing him; so he returned to the
District Court—this time with a class action[2] against the union and the cruise line
under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §
185,[3] asserting both hybrid and non-hybrid claims for the tips he and other cabin
stewards had not received.[4]  Lobo v. Celebrity Cruises, Inc. ("Lobo II"), No. 08-
23386 (S.D. Fl. 2008).  His hybrid claim against his employer, Celebrity Cruises,
Inc. ("Celebrity"), was that it breached the wage provisions of the collective

---

[1] Lobo I was brought as a class action, but the plaintiff did not seek class certification.

[2] As in Lobo I, the plaintiff did not seek class certification.

[3] Lobo's complaint invoked the District Court's subject matter jurisdiction under 28
U.S.C. § 1331 (federal question) and 28 U.S.C. § 1333 (admiralty).

[4] A hybrid claim is a suit in which a plaintiff may simultaneously assert a claim against
his employer and a claim against his union.  This type of claim supersedes the Convention and
permits a suit in federal court.  See DelCostello v. Int'l Brotherhood of Teamsters, 462 U.S. 151,
163-65, 103 S.Ct. 2281, 2290-92, 76 L.Ed.2d 476 (1983) ("Ordinarily . . . an employee is
required to attempt to exhaust any grievance or arbitration remedies provided in the collective-
bargaining agreement. . . . [But] when the union representing the employee in the
grievance/arbitration procedure . . . breach[es] its duty of fair representation . . . an employee may
bring suit against both the employer and the union, notwithstanding the outcome or finality of the
grievance or arbitration proceeding.").

4

bargaining agreement ("CBA") it had with FIT.  His hybrid claim against FIT was that it breached the duty of fair representation it owed him under § 9(a) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 159.[5]  Lobo's non-hybrid claim was lodged against FIT; it replicated the § 9(a) allegations of the hybrid claim.

Lobo and the members of the putative class were citizens and residents of India.  FIT is an Italian union.  Celebrity is a Liberian corporation; its cruise ships are registered in the Bahamas.  The defendants, citing Benz v. Compania Naviera Hidalgo, S.A., 353 U.S. 138, 77 S.Ct. 699, 1 L.Ed.2d 709 (1957) and McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 83 S.Ct. 671, 9 L.Ed.2d 547 (1963), separately moved the District Court to dismiss Lobo's complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for relief.  FIT also moved the court to dismiss it from the case under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process.  In an order entered on September 10, 2009, the court granted FIT's Rule 12(b)(5) motion and dismissed the complaint against it without prejudice.  It agreed with

---

[5] This claim arises under federal common law.  See Marquez v. Screen Actors Guild, Inc., 525 U.S. 33, 44, 119 S.Ct. 292, 299, 142 L.Ed.2d 242 (1998) ("When a labor organization has been selected as the exclusive representative of the employees in a bargaining unit, it has a duty, implied from its status under § 9(a) of the NLRA as the exclusive representative of the employees in the unit, to represent all members fairly.").

5

both defendants that <u>Benz</u> foreclosed Lobo's hybrid claims; as <u>Benz</u> explicitly held, the LMRA does not apply to labor disputes between foreign crew members and a foreign ship owner. 353 U.S. at 143, 77 S.Ct. at 702. The court therefore dismissed the complaint as to Celebrity with prejudice.

## B.

After perfecting service of process on FIT, Lobo filed an amended complaint against FIT alone. He reasserted a non-hybrid breach of fair representation claim under § 9(a) as well as under federal common law. He also added a state law claim for breach of a duty of "good faith and fair dealing."[6] FIT moved the District Court to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction. On July 7, 2010, the court granted the motion. In its view, since the non-hybrid claim could not be brought under the LMRA and the NLRA, the court lacked the subject matter jurisdiction needed to entertain the amended complaint. On July 8, 2010, the District Court, in conformance with its orders of September 10, 2009, and July 7, 2010, entered final judgment in favor of Celebrity and FIT.

---

[6] Lobo brought the state law claim under the District Court's supplemental jurisdiction, 28 U.S.C. § 1367. The CBA contained a provision stating that the agreement was to be construed under Florida law. The amended complaint alleged that parties to a contract are obligated to deal with one another in good faith and fairly.

6

C.

While <u>Lobo II</u> was pending in the District Court, John Gomez and nine of the cabin stewards named in that case brought a class action against Celebrity under the Seaman's Wage Act, seeking damages in the amount of the tips Celebrity had allegedly withheld. <u>Gomez v. Celebrity Cruises, Inc.</u>, No. 09-22991 (S.D. Fl. 2009).[7] Rather than invoking the arbitration provision of the CBA, Celebrity moved the court to dismiss the case under the doctrine of <u>res judicata</u>. Celebrity argued that the plaintiffs should have, but did not, assert their Seaman's Wage Act claim in <u>Lobo II</u>. The District Court agreed and on December 23, 2009, dismissed the case with prejudice.[8]

Gomez and the nine other cabin stewards who had joined him in <u>Lobo II</u> and <u>Gomez</u> (the "Stewards") appealed the District Court's judgments in both cases, Appeal Nos. 10-13623 and 10-10406, respectively. We address the appeals separately, beginning with <u>Lobo II</u>.

---

[7] Inacio Lobo was not included as a named plaintiff because he and Celebrity had settled the claim he had brought in <u>Lobo I</u> and, again, in <u>Lobo II</u>.

[8] The court did so without having first certified the plaintiffs' class.

7

II.

A.

The hybrid claims in Lobo II were dismissed under Rule 12(b)(6) for failure to state a claim. We review Rule 12(b)(6) dismissals de novo, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. Hill v. White, 321 F.3d 1334, 1335 (11th Cir. 2003).

The District Court dismissed the Stewards' hybrid claims against Celebrity and FIT after determining that the Supreme Court's decisions in Benz and McCulloch foreclosed the application of the LMRA and the NLRA to wage disputes between foreign ships and foreign seamen.[9] We agree.

It is well-settled that these statutes do not apply to wholly-foreign disputes. In Benz, the Supreme Court concluded that "Congress did not fashion [the LMRA] to resolve labor disputes between nationals of other countries operating ships under foreign laws. The whole background of the Act is concerned with industrial strife between American employers and employees." 353 U.S. at 143-44, 77 S.Ct. at 702. The Benz court found this legislative history compelling, as "inescapably

---

[9] The LMRA was actually a series of amendments to the NLRA. Because the implied duty of fair representation has been found under § 9(a) of the original NLRA, and the vehicle to bring a hybrid claim has been found under the later addition of § 301 of the LMRA, we join the parties and the District Court in distinguishing between the acts.

8

describ[ing] the boundaries of the Act as including only the workingmen of our own country and its possessions." Id. at 144, 77 S.Ct. at 703. Similarly, the Supreme Court has held that the NLRA does not extend to foreign crews working aboard foreign ships because such an application would interfere with the "internal management and affairs" of the ship. McCulloch, 372 U.S. at 20-21, 83 S.Ct. at 677. Thus, as the Supreme Court indicated in Spector v. Norwegian Cruise Line Ltd., 545 U.S. 119, 130, 125 S.Ct. 2169, 2177, 162 L.Ed.2d 97 (2005), Benz and McCulloch stand for the proposition that "[a]bsent a clear statement of congressional intent, general statutes [like the LMRA or the NLRA] may not apply to foreign-flag vessels insofar as they regulate matters that involve only the internal order and discipline of the vessel."

We need not labor long to determine whether a wage dispute between a foreign-flag vessel and its foreign crew falls within the internal affairs of a ship. Benz and McCulloch have plainly answered that question. See Benz, 353 U.S. at 142-44, 77 S.Ct. at 701-02 (holding the LMRA inapplicable to the picketing of a foreign ship operated entirely by foreign seamen); McCulloch, 372 U.S. at 12-13, 83 S.Ct. at 672-73 (holding that the National Labor Relations Board could not order a union election because the NLRA did not apply to foreign seamen aboard foreign vessels). As the Supreme Court has made clear, the LMRA and NLRA do

9

not apply to "wage disputes arising on foreign vessels between nationals of other countries," even when "the vessel comes within our territorial waters."[10]  Benz, 353 U.S. at 142, 77 S.Ct. at 702.

Here, the Stewards are engaged in a wage dispute with their employer, Celebrity, and their labor union, FIT.  All parties in this dispute are foreign.  The holdings of Benz and McCulloch control.

The Stewards contend that Benz is inapplicable.  They attempt to distinguish the case by noting that Benz concerned the picketing of ships, whereas the Stewards' claim concerns a contractual breach over wages.  The seamen in Benz, however, were picketing because they "demanded that their term of service be reduced, their wages be increased, and more favorable conditions of employment be granted."  353 U.S. at 139, 77 S.Ct. at 700.  Just like the Stewards, the Benz plaintiffs were engaged in (among other things) a wage dispute arising from their employment contract with their foreign-flag vessel.  The LMRA does not apply to these disputes.

The Stewards next argue that, even if Benz is on point, it was implicitly overruled by Hellenic Lines, Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26

---

[10] The Stewards raise the argument that the presumption against extraterritorial application should not apply here. This contention is inapposite. The question of applicability turns on the identity of parties, not whether their conduct occurred within United States territory.

L.Ed.2d 252 (1970).  According to the Stewards, Hellenic Lines replaced the Benz and McCulloch "internal affairs" framework with a choice of law analysis determined by the points of contact an employer has with the United States.  This mode of analysis was rejected by the Supreme Court in McCulloch.  372 U.S. at 19 n.9, 83 S.Ct. at 676 n.9 (noting that points of contact analysis is inappropriate when application of the NLRA would interfere with the internal order of the ship, though could be applied to contexts arising under the Jones Act).  Hellenic Lines did not disturb McCulloch's holding.  In Hellenic Lines the Supreme Court found that tort claims brought under the Jones Act could be maintained by a foreign seaman against a foreign ship.  372 U.S. at 308-310, 83 S.Ct. at 1733-34.  The Supreme Court, however, has not extended the Hellenic Lines analysis to maritime contract cases—such as this case—and this court has expressly declined to do so. See Dresdner Bank AG v. M/V Olympia Voyager, 446 F.3d 1377, 1381 (11th Cir. 2006) (declining to extend the Lauritzen and Hellenic Lines points of contact analysis to maritime contracts).  Indeed, the Supreme Court reaffirmed the reasoning of Benz and McCulloch in Spector—a case post-dating Hellenic Lines—where it determined the applicability of the Americans with Disabilities Act to foreign ships.  545 U.S. at 129-30, 125 S.Ct. at 2177.  The analysis in Benz and McCulloch continues to be the relevant inquiry.

11

The Stewards claim that, even if Benz and McCulloch control, the internal affairs of Celebrity's ships would not be disrupted were we to apply the LMRA and the NLRA to this dispute. They argue that applying these statutes would merely compel the paying of wages, not affect the "movement and functioning" of the ships. This argument misapprehends the internal affairs inquiry. Federal courts are not charged with predicting the operational consequences of applying these statutes on a case-by-case basis. Nor have the Stewards presented support suggesting otherwise. To adopt this reasoning would lead to the kind of inquiry into the "internal order and discipline" that McCulloch concluded would be "entirely infeasible in actual practice." 372 U.S. at 19, 83 S.Ct. at 676. Because the Supreme Court has already determined that wage disputes between a foreign vessel and its foreign crew fall within the internal affairs of a ship, we are foreclosed from revisiting the question. Benz, 353 U.S. at 142-43, 77 S.Ct. at 702.

The Stewards also contend that applying these statutes will not negatively impact international comity. This argument addresses the canon of statutory construction applied in Benz and McCulloch that, absent an express statement from Congress, we do not construe statutes to extend to disputes between foreign parties where the United States maintains no interest. See Spector, 545 U.S. at 131-32, 125 S.Ct. at 2178 ("It is reasonable to presume Congress intends no

12

interference with matters that are primarily of concern only to the ship and the foreign state in which it is registered."). The Supreme Court has refused to disrupt this rule unless clearly instructed by Congress, Benz, 353 U.S. at 147, 77 S.Ct. at 704, particularly where, as here, the legislative record bears no mention of foreign application. See Windward Shipping (London) Ltd. v. Am. Radio Ass'n, AFL-CIO, 415 U.S. 104, 113, 94 S.Ct. 959, 964, 39 L.Ed.2d 195 (1974) ("We are even more reluctant to attribute to Congress an intention to disrupt this comprehensive body of law by construction of an Act unrelated to maritime commerce and directed solely at American labor relations.").

This canon is rooted in a general concern for international comity. Nevertheless, the Stewards argue that this canon should be applied on a case-by-cases basis and not under these facts. They argue that, unlike in McCulloch where Honduras had a strong interest in applying its laws to Honduran citizens, the Bahamas has no interest in applying its labor laws here because the Stewards are citizens of India, not the Bahamas.

A case-specific inquiry into the effect on international relations is not permitted. Though the McCulloch court had occasion to illustrate how the application of these statutes could readily arouse international discord, see 372 U.S. at 21, 83 S.Ct. at 677, the case-specific facts of a particular dispute do not

13

govern the analysis.  Benz clearly illustrates that the concern for international comity in these cases is general in nature and not allayed by a case-by-case, effects-oriented inquiry.  Though that case was about the LMRA, the Benz court recounted the international rancor that was aroused when Congress proposed certain amendments to the Seamen's Wage Act[11]—a statute unrelated to the LMRA.  The Court explained that the extension of the LMRA to disputes between foreign parties had the potential to create an analogous reaction.  The Court mentioned no brewing international backlash over the potential extension of the LMRA itself; it merely used the Seaman's Wage Act tensions to illustrate the potential for international discord were the Court to apply generally-worded statutes to wholly-foreign disputes without express instruction from Congress.  See Benz, 353 U.S. at 146, 77 S.Ct. at 703-04.  An actual or imminent international quarrel therefore is not necessary to deny the application of these statutes; Congress must speak clearly regardless of the specific facts of a particular case.  We would upend this principle were we to entertain the Stewards' argument here.

Lastly, the Stewards contend that § 301 of the LMRA is coextensive with

---

[11] These amendments would have extended the Seaman's Wage Act to advance payments given to foreign seaman by foreign vessels.  See Benz, 353 U.S. at 146, 77 S.Ct. at 703-04.

14

the remedies under the Seaman's Wage Act, which expressly permits foreign seamen to bring suit against foreign ships. The Stewards base this argument on U.S. Bulk Carriers, Inc. v. Arguelles, 400 U.S. 351, 357, 91 S.Ct. 409, 413, 27 L.Ed.2d 456 (1971), which held that § 301 functions as "an optional remedy" to seamen in addition to those available under the Seaman's Wage Act. The holding in Bulk Carriers was a narrow one: the Court held that the express remedy in the Seaman's Wage Act was not implicitly overruled by the addition of arbitration procedures in § 301 of the LMRA; rather, the LMRA merely afforded seamen an additional path to recovery. Id. at 357-58, 91 S.Ct. at 413. Furthermore, the plaintiff in Bulk Carriers was an alien resident of Baltimore that was represented by an American union and worked aboard an American ship. Arguelles v. U.S. Bulk Carriers, Inc., 408 F.2d 1065, 1066, 1068 (4th Cir. 1969). Because the dispute in Bulk Carriers involved an American ship and an American union, there is no justification for reading that case as extending § 301 to disputes between foreign parties. See Int'l Longshoremen's Local 416, AFL-CIO v. Ariadne Shipping Co., 397 U.S. 195, 199-200, 90 S.Ct. 872, 874, 25 L.Ed.2d 218 (1970) (holding that American residents hired by a foreign ship to work on an American

15

dock did not involve the internal affairs of a foreign ship).[12]

### B.

Next, we address the District Court's decision to dismiss the Stewards' non-hybrid claims under Rule 12(b)(1). We review dismissal for lack of subject matter jurisdiction de novo. Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009). In its July 7, 2010, order, the District Court considered the applicability of the judicially-created duty of fair representation. Finding no other source for the duty of fair representation other than in the NLRA and finding the NLRA inapplicable to the Stewards' case, the District Court dismissed the Stewards' claim under Rule 12(b)(1) for lack of subject matter jurisdiction.

To determine whether a complaint states a federal cause of action is a merits question. Morrison v. Nat'l Australia Bank, Ltd., — U.S. —, 130 S. Ct. 2869, 2877, 177 L.Ed.2d 535 (2010). "Subject-matter jurisdiction, by contrast, refers to a tribunal's power to hear a case." Id. (internal quotation marks omitted). Where a plaintiff's well-pleaded complaint alleges a cause of action arising under federal law, subject matter jurisdiction exists for a federal court to determine whether the

---

[12] The Stewards' have also presented plain meaning and legislative purpose arguments. They are foreclosed by Benz and McCulloch. Benz, 353 U.S. at 144, 77 S.Ct. at 702-03 (noting the complete absence of legislative history indicating the LMRA's application to disputes between foreign parties); McCulloch, 372 U.S. at 19-20, 83 S.Ct. at 676-77 (rejecting a literal reading of the NLRA's language given the extensive legislative history suggesting the Act applies only to American workingmen and their employers).

allegations entitle him to relief.  City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 163, 118 S.Ct. 523, 529, 139 L.Ed.2d 525 (1997); see Bell v. Hood, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946) ("Jurisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover.").  Because the Stewards sufficiently alleged a breach of the federal common law duty of fair representation under the NLRA, the District Court had subject matter jurisdiction to hear the case under 28 U.S.C. § 1331.  See Marquez, 525 U.S. at 49, 119 S.Ct. at 302 ("[W]hen a plaintiff alleges a breach of the duty of fair representation, this claim is cognizable in . . . federal court.").

Nevertheless, we affirm the dismissal of the fair representation claim under Rule 12(b)(6) for failure to state a claim.[13]  See Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1256 (11th Cir. 2001) ("[W]e may affirm [the District Court's] judgment on any ground that finds support in the record.") (internal quotation marks omitted).

---

[13] Though the District Court had jurisdiction to hear the fair representation claim, this does not revive the Stewards' state law claim for breach of good faith and fair dealing.  The District Court indicated that even if it if had original jurisdiction it would decline to exercise supplemental jurisdiction over the Stewards' state law claim.  We need not disturb this disposition. See Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) ("We have encouraged district courts to dismiss any remaining state claims when . . . the federal claims have been dismissed prior to trial.").

17

The Stewards contend that even if the hybrid mechanism of § 301 of the LMRA is inapplicable, they can still maintain a non-hybrid claim against FIT under § 9(a) of the NLRA.  They argue that our precedent dictates that the NLRA applies when a foreign union engages in wrongful conduct through its agents within the United States.  To support this contention, the Stewards look to our decision in Dowd v. Int'l Longshoremen's Assoc., AFL-CIO, 975 F.2d 779 (11th Cir. 1992).  Dowd does not support this argument.  Dowd concerned the application of the NLRA to an American labor union that induced a foreign union to pressure foreign importers to establish a secondary boycott in the United States.  Id. at 781.  The application of the NLRA to the American union in that case—and the noticeable absence of NLRA claims against the foreign union—actually supports the argument that the NLRA does not apply to the Stewards' claims.  Indeed, in Dowd we restated the Supreme Court's holding in McCulloch.  975 F.2d at 788 ("[T]he NLRA does not regulate the practices of owners of foreign vessels which are temporarily present in an American port with regard to foreign employees working on these vessels.").  The Stewards have failed to identify a source for the duty of fair representation other than the NLRA.  Because the NLRA does not apply when its application would only concern the internal affairs of a foreign vessel, the Stewards cannot bring a fair representation claim under it

18

here.

## III.

We now move to <u>Gomez</u>.  The doctrine of <u>res judicata</u>, or claim preclusion, bars the parties to an action from litigating claims that were or could have been litigated in a prior action between the same parties.  <u>Jaffree v. Wallace</u>, 837 F.2d 1461, 1466 (11th Cir. 1988).  The party asserting claim preclusion as a defense must establish four elements: (1) the prior decision must have been rendered by a court of competent jurisdiction; (2) there must have been a final judgment on the merits; (3) both cases must involve the same parties or their privies; and (4) both cases must involve the same causes of action.  <u>In re Piper Aircraft Corp.</u>, 244 F.3d 1289, 1296 (11th Cir. 2001).  We review a claim preclusion decision <u>de novo</u>.  <u>Id.</u> at 1295.

The question before us is whether the dismissal of the LMRA claim in <u>Lobo II</u> precluded the Stewards from bringing a claim under the Seaman's Wage Act in <u>Gomez</u>.  The parties agree that the District Court exercised competent jurisdiction and that the actions involve the same parties.  The parties dispute whether the District Court's order dismissing the LMRA claim was a final judgment on the merits and whether the cases share the same cause of action.

19

A.

We agree with the Stewards that the District Court's September 10, 2009, order dismissing the LMRA claims in Lobo II was not a final judgment.  Although the Stewards appealed that order, we dismissed the appeal for lack of jurisdiction because the order was not final or immediately appealable.  This order was not claim preclusive.  See First Ala. Bank, N.A. v. Parsons Steel, Inc., 825 F.2d 1475, 1480 n.5 (11th Cir. 1987) ("Nonappealable interlocutory orders are not entitled to collateral estoppel or res judicata effect.")[14]  Nevertheless, we take judicial notice of the District Court's entry of judgment on July 8, 2010, in Lobo II.  This judgment rendered the September 10, 2009, dismissal final.

We also conclude that the September 10, 2009, order was an adjudication on the merits because the order was a Rule 12(b)(6) dismissal with prejudice.  Hall v. Tower Land & Inv. Co., 512 F.2d 481, 483 (5th Cir. 1975) ("[G]ranting defendant's motion to dismiss for plaintiff's failure to state a claim upon which

[14] Celebrity correctly observes that the categories of appealable orders and orders entitled to preclusive effect do not always overlap.  Yet the differences between the two arise not because some preclusive orders are non-final, but because some non-preclusive orders are nevertheless appealable.  See, e.g., 18 Moore's Federal Practice - Civil § 131.30[2][c][i] (3d ed. 2010) ("The Supreme Court has construed the term 'final decision' to embrace some collateral orders the effect of which cannot be rectified on appeal from final judgment.  Furthermore, 28 U.S.C. § 1292 provides for appeals of certain interlocutory orders.  Even though such matters are 'appealable,' they could not be the basis for claim preclusion." (footnotes omitted)).  9 U.S.C. § 16(a)(1) is particularly on point: interlocutory orders denying a motion to compel arbitration are generally appealable.

20

relief can be granted operates as an adjudication on the merits."); see Citibank, N.A. v. Data Lease Fin. Corp., 904 F.2d 1498, 1501 (11th Cir. 1990) ("[D]ismissal of a complaint with prejudice satisfies the requirement that there be a judgment on the merits."). The Stewards' contention that a judgment on the merits occurs only when the rendering court has addressed the substance of every claim to be later precluded is baseless. The District Court's judgment of July 8, 2010, constitutes a final adjudication on the merits as to Celebrity.[15]

### B.

Next, the parties dispute whether the cause of action in Gomez is the same as the one in Lobo II. A cause of action is the same for res judicata purposes if it "arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action." Piper, 244 F.3d at 1297. The Stewards argue that there is no common nucleus of operative fact here because the LMRA claim in Lobo II arose out of Celebrity's conduct during the arbitration and not out of the company's failure to pay wages. But claim preclusion "applies not only to the precise legal theory presented in the prior case, but to all legal theories and claims

---

[15] The Stewards also argue that the District Court's dismissal of the claim against Celebrity in Lobo II was "purely a dismissal for lack of subject matter jurisdiction"—and thus lacks claim-preclusive effect. In its September 10, 2009 order, the District Court dismissed the Stewards' hybrid claim against Celebrity for failure to state a claim, not for lack of subject matter jurisdiction. The Stewards' characterization of the District Court's September 10, 2009, order is meritless.

21

arising out of the same nucleus of operative fact." NAACP v. Hunt, 891 F.2d 1555, 1561 (11th Cir. 1990).

The test for a common nucleus of operative fact is "whether the same facts are involved in both cases, so that the present claim could have been effectively litigated with the prior one." Piper, 244 F.3d at 1301. A comparison of the complaints reveals that the facts in the LMRA claim in Lobo II and the Seaman's Wage Act claim in Gomez were alleged verbatim. This satisfies the same cause of action requirement.

## IV.

We affirm the District Court in Appeal No. 10-13623. Because the Stewards are foreign employees involved in an internal wage dispute with a foreign ship, neither the LMRA nor the NLRA apply to the Stewards' challenges. Since their claims are dependant upon the protections of those acts, the District Court properly dismissed their claims against Celebrity and FIT in Lobo II.

We affirm the District Court in Appeal No. 10-10406. Because the Stewards could have raised their Seaman's Wage Act claim in Lobo II but did not, we affirm the District Court's order in Gomez to dismiss the claim as barred by the doctrine of res judicata.

AFFIRMED

22