[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10090
_____

D.C. Docket No. 1:13-cv-21438-CMA

ARLE CALDERON,
MANNY FERNANDEZ,
ADALBERTO GALO,
LUIS MOLINA,
ANDY W. DEL TORO,
SERGIO D. HERNANDEZ,
PEDRO JOSE MARTINEZ,
WILLIAMS ARIELLO GALANTINO,
JOSE DE LA CRUZ CARDENAS,
on their own behalf and others similarly situated,

Plaintiffs-Appellants,

versus

BAKER CONCRETE CONSTRUCTION, INC.,
a Florida profit corporation, et al.,

Defendants,

FORM WORKS/BAKER JV, LLC.,
a foreign profit corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(November 14, 2014)

Before ED CARNES, Chief Judge, and RESTANI,[*] Judge, and ROBRENO,[**] District Judge.

ED CARNES, Chief Judge:

After a ghostly voice told him "If you build it, he will come," Ray Kinsella turned his corn field into a ballpark to lure "Shoeless" Joe Jackson out of his eternal retirement.[1]  Apparently without hearing any voice but their own, the Miami Marlins built a state of the art 37,000-seat stadium with a retractable roof hoping to lure their fans out of retirement, or at least out of the apathy induced by South Florida's sultry summers and the Marlins' unremarkable record.[2]  The

_____

[*] Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by designation.

[**] Honorable Eduardo C. Robreno, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

[1] Field of Dreams (Universal Pictures 1989); W.P. Kinsella, Shoeless Joe 3–6 (1982).

[2] The construction of the new stadium was controversial, especially in regard to the nature and extent of public financing.  The "Field of Dreams" metaphor surfaced at least as early as the Miami-Dade County Commission's debate about the project.  An Associated Press story contained the following quotation:  "We keep hearing 'If you build it they will come,' said Commissioner Katy Sorenson, who cast a vote against the plan.  'I don't believe it.  And this 'field of dreams' is going to be a nightmare for our taxpayers."  Sarah Larimer, Marlins Gets [sic] Funding for Long-Coveted Ballpark, Associated Press, Mar. 24, 2009, available at https://a.next.westlaw.com/Document/Iaa7d5290182511dea339ca001e7c41f3/View/FullText.html.

problem that gave rise to this case is, if the allegations in the complaint are taken as true, one of the contractors disregarded a non-baseball axiom: when you hire workers to "build it," you had better pay them the wages they are due under the Fair Labor Standards Act.

The plaintiffs, some of the workers who helped build the new Marlins ballpark, claim that the contractor who employed them failed to pay them the wages, including overtime, that they were entitled to receive under the Fair Labor Standards Act. After requiring the plaintiffs to file a supplementary "statement of claim," which is not mentioned in the Federal Rules of Civil Procedure, the district court dismissed their complaint for lack of subject matter jurisdiction. This is their appeal. We reverse because the complaint set out a basis for federal jurisdiction, even if the statement of claim did not reiterate it.

I.

The only defendant remaining in the case is Form Works, a Florida construction contractor. The plaintiffs are former Form Works employees who helped build Marlins Park. In April 2013, they filed a four-count complaint against Form Works in federal district court. Count I alleged that Form Works violated the plaintiffs' rights under the Fair Labor Standards Act in two ways. The first way is that it "failed to compensate Plaintiffs at the rate of one and a half times Plaintiffs' regular rates of pay for all hours worked in excess of forty within a single

3

workweek."  The allegations are that Form Works instead paid the plaintiffs "straight time" (their regular hourly rate) for some overtime hours and nothing at all for other overtime hours.

The second way in which Count I alleged that Form Works violated the plaintiffs' rights under the FLSA is by misclassifying them under a county ordinance that, as a matter of state law, governs wages for county contract workers. The plaintiffs concede that they were paid at least $14.00 per hour, well in excess of the federal minimum wage of $7.25.  See 29 U.S.C. § 206(a)(1)(C).  They contend, however, that as a result of being misclassified under the county ordinance their hourly wages were less than they should have been.  That, in turn, means that their overtime pay was lower than it otherwise would have been because when multiplying two positive factors, reducing the size of one will always reduce the size of the product.

For brevity's sake, we'll refer to the first factual basis of Count I as the "unpaid-overtime-hours claim" and the second as the "misclassification claim." Counts II and III raised similar claims about unpaid hours and misclassification but not as they related to overtime.  Those counts are not directly involved in this appeal.  Count IV sought declaratory relief.

After the plaintiffs filed their complaint, the district court ordered them to file a "statement of claim."  A statement of claim is a document, not mentioned in

4

the Federal Rules of Civil Procedure, that the United States District Court for the Southern District of Florida uses as a matter of local practice to help its courts classify and manage the many FLSA cases filed there.  The order required plaintiffs to file a statement "setting forth the amount of alleged unpaid wages, the calculation of such wages, and the nature of the wages (e.g., overtime or regular)."  The statement of claim that the plaintiffs filed in this case went beyond the allegations of the complaint to detail the asserted misclassification of each plaintiff.  For example, it stated that plaintiff Arle Calderon had been classified as a "Laborer" and paid $14.00 per hour when he should have been classified as a "Bricklayer/Allied Craftsman" and paid $25.55 per hour.  The statement of claim pointed out that because no discovery had taken place, the plaintiffs could not estimate the full measure of their damages. One thing that the document did not do is mention the unpaid-overtime-hours claim.

Form Works contended that by leaving that claim out of the statement of claim document, the plaintiffs had narrowed the scope of their complaint so that it rested on the misclassification claim alone, which Form Works argued failed to state a federal claim.  On that basis, Form Works moved to dismiss the complaint for lack of subject matter jurisdiction.  The district court denied the motion, concluding that the misclassification claim in Count I, which is tied to overtime pay, did state a federal claim under the FLSA.  The court ruled that it had subject

matter jurisdiction over Count I for that reason, and it had supplemental jurisdiction over the remaining claims.  Form Works then filed a motion asking the court either to certify an interlocutory appeal or to reconsider its order.

The district court chose to reconsider its order, and after doing so agreed with Form Works.  Focusing on the misclassification claim in Count I, and apparently believing that the plaintiffs' unpaid-overtime-hours claim had been amended out of the complaint, the court ruled that it did not have jurisdiction "to hear a labor dispute where the employee was paid in excess of the [federal] minimum wage and overtime was paid in compliance with the terms of the FLSA," and it dismissed the complaint.  This is the plaintiffs' appeal.

## II.

In reviewing a district court's ruling on subject matter jurisdiction, we review its legal conclusions de novo and ordinarily review its factfindings only for clear error.  Gupta v. McGahey, 709 F.3d 1062, 1064–65 (11th Cir. 2013);  Zinni v. E.R. Solutions, Inc., 692 F.3d 1162, 1166 (11th Cir. 2012).  When the jurisdictional question is "intertwined with the merits," however, we review the underlying factfindings de novo.  Lawrence v. Dunbar, 919 F.2d 1525, 1530 (11th Cir. 1990) (holding that in those circumstances we treat the challenge as a summary judgment motion and thus "[o]ur review is . . . plenary").

6

Federal courts have subject matter jurisdiction over a case when the "plaintiff's well-pleaded complaint alleges a cause of action arising under federal law." Lobo v. Celebrity Cruises, Inc., 704 F.3d 882, 891 (11th Cir. 2013). The FLSA provides a federal cause of action for an employee who claims that his employer has failed to pay "one and one-half times the regular rate at which he is employed" for all hours beyond forty worked in a workweek. 29 U.S.C. §§ 207(a)(2)(C), 216(b). The unpaid-overtime-hours claim in Count I alleges that the plaintiffs were not always paid time-and-a-half for hours beyond forty worked in a workweek but were instead paid their regular rate for some overtime hours and nothing at all for others. That is a federal claim alleged on the face of the complaint. So the district court had jurisdiction based on the complaint.[3] The question is whether the statement of claim that the plaintiffs filed under the local practice amended that jurisdictional basis out of the complaint.

---

[3] Form Works contends that the plaintiffs waived any argument that their unpaid-overtime-hours claim survived the statement of claim because they did not raise that argument in the district court in response to the motion to dismiss. And the district court never determined whether it had jurisdiction based on the unpaid-overtime-hours claim. But federal courts have "a virtually unflagging duty to adjudicate claims within their jurisdiction." Wexler v. Lepore, 385 F.3d 1336, 1339 (11th Cir. 2004) (quotation marks omitted); see also New Orleans Pub. Serv., Inc. v. Council of the City of New Orleans, 491 U.S. 350, 358, 109 S. Ct. 2506, 2513 (1989). That duty does not "flag" or disappear when a plaintiff fails to reiterate in a later filing a basis for jurisdiction that is clear on the face of the complaint or when a district court does not address a basis for federal jurisdiction. Cf. Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir. 1999) ("Under the law of this circuit, . . . we may consider subject matter jurisdiction claims at any time during litigation.").

It did not.  The plaintiffs' failure to reiterate their unpaid-overtime-hours claim in the statement of claim document is not controlling.  That document is an extra-Rules practice used by the district court for its convenience and to aid in case management.  It does not have the status of a pleading and it is not an amendment under Rule 15 of the Federal Rules of Civil Procedure.  We do not mean to imply that the district court cannot use an off-the-books procedural device or practice to help organize and manage its caseload.  See Chrysler Int'l Corp. v. Kelly, 280 F.3d 1358, 1360 (11th Cir. 2002) (noting the "broad discretion district courts have in managing their cases").  But the existence of federal jurisdiction at the pleading stage is to be determined based on the contents of the complaint, applying the well-pleaded complaint rule.  Amendments to a complaint are governed by Rule 15, not by the local practice of a district court requiring the filing of a statement of claim.  Therefore, the district court had and was required to exercise subject matter jurisdiction. [4]

### III.

For these reasons, we **REVERSE** the district court's order dismissing the complaint for lack of jurisdiction and **REMAND** the case for further proceedings consistent with this opinion.

---

[4] Because we conclude that the complaint stated a federal claim for unpaid overtime hours, we need not reach and imply no view on whether the plaintiffs' misclassification claim is "a cause of action arising under federal law."  See Lobo, 704 F.3d at 891.

8