**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-11532
Non-Argument Calendar
_____

CAPITAL SECURITY SYSTEMS, INC.,

*Plaintiff-Appellant,*

*versus*

NCR CORPORATION,

*Defendant- Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-04691-TCB
_____

Before ROSENBAUM, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

The issue before us in this appeal is whether Capital Security Systems, Inc.'s ("Capital") fraud on the court claim in the action below shares a common core of operative fact with its claim for

common law fraud in a previous action, such that *res judicata* bars its current claim.  The district court thought so and dismissed Capital's complaint with prejudice.  We agree.  Although Capital argues that its previous common law fraud claim is factually and legally different from its current fraud on the court claim, the disputes in both actions concern the same underlying course of alleged wrongdoing.  Namely, Capital asserts that during a lawsuit involving a patent claim it previously brought against NCR Corporation ("NCR"), NCR manipulated discovery, concealed evidence, and misled the court during a *Markman*[1] hearing, all for the purpose of defeating Capital's lawsuit.  Thus, because the other three elements of the test for *res judicata* are met, we affirm the district court's dismissal.[2]

## I.    BACKGROUND

In 2014, Capital brought a patent infringement lawsuit against NCR, an ATM seller (the "Patent Action").  *See* Complaint, *Cap. Sec. Sys., Inc. v. NCR Corp.*, No. 14-cv-1516 (N.D. Ga. May 19, 2014).  Capital alleged that NCR's ATMs infringed Capital's patents for ATM check imaging technology which could accurately and

---

[1] *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 391 (1996) (establishing that district judges in patent cases should resolve the construction of a patent claim, including key term definitions, before adjudicating a case on the merits).

[2] Capital also raised another issue on appeal—the district court's imposition of sanctions against its attorneys—but we dismissed that issue on jurisdictional grounds.  Simply put, Capital was not sanctioned, its attorneys were, and thus Capital lacks standing to appeal.

securely cash checks using CAR and LAR technologies.[3]  NCR brought counterclaims alleging that Capital's patents were invalid.

As the Patent Action proceeded, the district court held a *Markman* hearing, after which the district court invalidated certain of Capital's claims and construed several disputed terms in favor of NCR.[4]  As the *Markman* hearing is the basis for so much that follows, we will describe it in some detail here.  During the hearing, the parties made numerous representations to the court concerning the technologies in use by the parties and the industry for secure check cashing, including CAR/LAR technologies.  To the best of our understanding, Capital (and sometimes its principal, Robin Gustin) allege that during the *Markman* hearing NCR made several intentional misrepresentations to the district court concerning the nature of the technology used by NCR's machines.  Specifically, Capital alleges that NCR categorically denied using both CAR and LAR technologies together—which is what Capital's patented technology did—and stated that the technology was not industry standard.  NCR's stated position at the *Markman* hearing was allegedly the exact opposite of NCR's representatives'

---

[3] "CAR" refers to the courtesy amount recognition line on a check, which is the space where the check amount is inscribed in numerical form.  "LAR" refers to the legal amount recognition line, which is the space where the check amount is inscribed in words.

[4] Capital appealed the district court's *Markman* rulings to the Federal Circuit, which partially affirmed the district court and remanded for further proceedings.  *See Cap. Sec. Sys., Inc. v. NCR Corp.*, 714 F. App'x 1017 (Fed. Cir. 2018).

testimony to Congress several years earlier, when they testified to the use of CAR/LAR technology which, due in part to their testimony, became the codified industry standard. The alleged mismatch between these positions is the core misrepresentation that Capital has consistently complained of (the "*Markman* Misrepresentation"), although its theories of the legal significance of the *Markman* Misrepresentation have evolved significantly from one action to the next.

As the Patent Action progressed, Capital's counsel eventually requested leave to withdraw its representation, which the district court granted. As Capital did not thereafter obtain new counsel, and thus did not oppose NCR's counterclaims, the district court entered default judgment for NCR, holding that Capital's patents were invalid.

Notably, after Capital's counsel withdrew but before the district court's entry of judgment, Capital's CEO, Robin Gustin, filed a *pro se* motion to "HEAR THE TRUTH UNDER Making False Statements" with the district court. The threadbare motion attempted to identify to the district court the *Markman* Misrepresentation, but contained only conclusory argument followed by quotes and links to YouTube videos. The court rejected the motion because Gustin, a non-attorney, filed it on a corporation's behalf.

On March 4, 2019, just days before the conclusion of the Patent Action, Gustin sued NCR for, among other claims, common law fraud (the "Florida Action"). *See* Complaint, *Gustin v. NCR*

25-11532                Opinion of the Court                5

*Corp.*, No. 19-cv-80291 (S.D. Fla. Mar. 4, 2019).  Gustin proceeded *pro se* initially, filing an original complaint followed by four amended complaints before obtaining counsel who filed a fifth amended complaint on her behalf.  The fifth amended complaint added Capital as a plaintiff and alleged that NCR, via the *Markman* Misrepresentation, had intentionally misled the district court in the Patent Action concerning the nature of its technology.  The complaint alleged that NCR concealed its misrepresentation from Capital in the Patent Action by deliberately committing discovery violations, primarily by misclassifying materials as "Highly Confidential" and "Attorney's Eyes Only" to prevent Gustin—who had the technical knowledge to identify the misrepresentations—from reviewing the fraudulent documents, and also by suborning perjured testimony.  The alleged result of the deception was to "conceal[] the truth about the core functionality" of the technologies used by NCR which were at issue in the Patent Action, causing Capital to lose the Patent Action.  The district court dismissed the Florida Action with prejudice under Federal Rule of Civil Procedure 12(b)(6) and we affirmed, holding that "[b]ecause Gustin's attorney was 'privy' to the marked records, knowledge of their contents was imputed to Gustin [and Capital]."  *Gustin v. Nicoll*, 824 F. App'x 875, 878 (11th Cir. 2020).

Three years after we affirmed the district court in *Gustin*, Capital filed this case alleging that NCR committed fraud on the court in the Patent Action.  The core of Capital's claim in this action is that NCR committed fraud on the court in the Patent Action by committing the *Markman* Misrepresentation.  This time, Capital

alleged that NCR and its attorneys concealed its Congressional testimony and the facts underlying it from the court by intentionally "tamper[ing] with the discovery process": proffering "fraudulent testimony," concealing and withholding (or "scrubbing") discoverable materials, and "destroying evidence."

NCR moved to dismiss Capital's complaint as barred by the doctrine of *res judicata* and for failure to state a claim for fraud on the court. The district court agreed and dismissed Capital's complaint with prejudice on both grounds. The district court concluded first that *res judicata* indeed precluded Capital's claims because it could have brought them in the Florida Action; and second, that Capital failed to state a claim because it had not pled facts necessary to establish fraud upon the court.

This appeal timely followed.

## II.    DISCUSSION

We review *de novo* a district court's dismissal of a complaint under rule 12(b)(6). *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

The *res judicata* doctrine bars the filing of claims that were previously raised, or could have been previously raised, in an earlier proceeding. *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999). The doctrine requires that parties "must assert all claims for relief concerning the same subject matter in one lawsuit, *Starship Enters. of Atlanta, Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1254 (11th Cir. 2013), to ensure that "[o]nce a party has fought out a matter in litigation with the other party, he cannot later renew

that duel." *Comm'r v. Sunnen*, 333 U.S. 591, 598 (1948). *Res judicata* will bar a subsequent action if a "prior decision (1) was rendered by a court of competent jurisdiction; (2) was final; (3) involved the same parties or their privies; and (4) involved the same causes of action." *Rodemaker v. City of Valdosta Bd. of Educ.*, 110 F.4th 1318, 1324 (11th Cir. 2024). Here, only the fourth element is in dispute because the district court rendered a final judgment in the Florida Action which involved the same parties: Capital was a plaintiff in both the Florida Action and the current one, and NCR was the sole defendant in both.

"Determining whether two cases involve the same cause of action for the purposes of *res judicata* is an inquiry concerned with the substance, and not the form, of the two proceedings." *Id.* at 1329 (alteration adopted) (quotation omitted). As such, the focus of our analysis is on whether the previous and current causes of action share "the same nucleus of operative fact, or [are] based on the same factual predicate." *Israel Disc. Bank Ltd. v. Entin*, 951 F.2d 311, 315 (11th Cir. 1992). Causes of action share the same nucleus of operative fact if "the same facts are involved in both cases, so that the present claim could have been effectively litigated with the prior one." *Lobo v. Celebrity Cruises, Inc.*, 704 F.3d 882, 893 (11th Cir. 2013) (quotation omitted). Crucially, *res judicata* sweeps in claims that the parties did not bring, but could have brought, in a previous action. *Nevada v. United States*, 463 U.S. 110, 130 (1983) (explaining that *res judicata* applies "not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered

for that purpose" (quoting *Cromwell v. County of Sac*, 94 U.S. 351, 352 (1876))).

Here, Capital could have brought its fraud on the court claim in the Florida Action because the same core of operative fact to support its current claim was present and pled in the Florida Action. Both actions concern the same allegedly fraudulent core of operative fact—the *Markman* Misrepresentation—as the basis for both its Florida Action complaint and the complaint below: (1) NCR argued to the district court in the Patent Action that certain technology did not exist, was not industry standard, and was not used by NCR, but (2) NCR knew that the technology *did* exist because NCR earlier had testified to Congress that the technology existed and it became the codified industry standard, and (3) to conceal its falsehood from Capital and from the district court in the Patent Action, NCR committed numerous intentional, fraudulent acts. Knowing these facts when it filed the Florida Action for common law fraud, Capital had all the information necessary to identify and bring its current fraud on the court action. In other words, its fraud on the court claim in this case "could have been effectively litigated with the prior one." *Lobo*, 704 F.3d at 893.

Capital resists our conclusion with several arguments, of which none are persuasive. First, Capital argues that "the Florida action did not consider a 'fraud on the court' claim, but rather only 'common law fraud.'" This distinction is irrelevant. "*Res judicata* applies not only to the exact legal theories advanced in the prior case, but to all legal theories and claims arising out of the same

nucleus of operative facts." *Wesch v. Folsom*, 6 F.3d 1465, 1471 (11th Cir. 1993). Thus, Capital's choice of legal theory under which to proceed—here, fraud on the court; there, common law fraud—is beside the point, which is to examine "the substance, and not the form, of the two proceedings." *Rodemaker*, 110 F.4th at 1329 (alteration adopted) (quotation omitted). As Capital had all the factual ingredients before it in the Florida Action to craft its fraud on the court argument, *res judicata* bars Capital from asserting it here.

Second, Capital argues that it "never before had any fair opportunity to make its claim for fraud on the court, for many reasons." The first reason for its lack of "fair opportunity" is that it "neither possess[ed] nor reasonably appreciate[d] the factual basis for the [fraud on the court] claim." But as explained above, what matters is that Capital had all the relevant facts when it filed the Florida Action, not whether Capital drew all the correct legal conclusions from the facts.[5] Thus, the argument that Capital did not "appreciate" its claim is irrelevant.

The third reason Capital offers for its alleged lack of "fair opportunity" is that it had "an inability to timely amend its complaint in the patent infringement action" to bring the fraud on the court claim. That it was unable to amend its complaint may be

---

[5] We note that Capital's argument is further undermined by the existence of Gustin's own rejected *pro se* motion in the Patent Action—filed *before* the Florida Action—which alleged the same fraud directed at the district court as is at issue here.

true, but, again, it is irrelevant because the Florida Action is what bars the claims in this case, not the Patent Action.  Less than a year after judgment was entered in the Patent Case, Gustin brought the Florida Action (which Capital later joined as a plaintiff), once again alleging the same facts at issue here.  That Capital perhaps failed to investigate sooner did not deny it a "fair opportunity to make its claim."  *See Trustmark Ins. Co. v. ESLU, Inc.*, 299 F.3d 1265, 1271 (11th Cir. 2002) (holding that a plaintiff's failure to investigate its claims in a timely manner did not obviate *res judicata*).

Finally, Capital argues that previous "court orders stopp[ed] well short of addressing the merits of related (but not the same) claims."  This argument is both incorrect and irrelevant.  The district court's dismissal of Capital's complaint in the Florida Action on the merits for failure to state a claim was a decision on the merits.  *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3 (1981) (holding that a "dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits" in the *res judicata* context) (quotation omitted); *see Gustin v. Nicoll*, 824 F. App'x 875, 878 (11th Cir. 2020) (affirming the district court's dismissal of Capital's complaint for failure to state a claim).  And in any event, whether a previous court addressed the merits of Capital's claim for fraud on the court matters not for *res judicata* purposes because the inquiry turns only on whether the previous court *could have* done so had Capital properly raised the claim.  *Wesch*, 6 F.3d at 1471 ("*Res judicata* applies . . . to all legal theories and claims arising out of the same nucleus of operative facts.")  In other words, the *res judicata* doctrine's very nature is to bar "related

(but not the same) claims" even where the previous court did not "address[] the merits" of those related claims.

### III.    CONCLUSION

The doctrine of *res judicata* bars Capital's fraud on the court claim because it could have been brought in a previous action, and therefore the district court's judgment is

**AFFIRMED.**